393 A.2d 293

**Roland E. DuBREE, Executor of the Estate of Roland E. DuBree, Sr., Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania, Robert G. Bartlett, Paul L. Thomas, Joseph Wide, John Auerbach, Harry Snyder, Oscar Kulp, Eugene Schad, and Protection Service, Inc.**

Supreme Court of Pennsylvania.

Argued April 25, 1974.

Reargued Jan. 18, 1978.

Reargument Denied Nov. 16, 1978.

Harry R. Nixon, Schneider & Nixon, Hatboro, Stephen M. Feldman, Feldman & Feldman (Phila. Trial Lawyers Assn.), Philadelphia, for appellant.

Richard P. McBride, Doylestown, E. R. Cusey, Gerald Gornish, Harrisburg, for appellees.

Argued before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

Reargued before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Appellant Roland DuBree, Jr., executor of the estate of Roland DuBree, Sr., seeks damages in a wrongful death and survival action against appellees, the Commonwealth of Pennsylvania and seven named officials of the Pennsylvania Department of Transportation.[1] Decedent was killed when,

1. The individual defendants and their official titles at the time of the alleged trespass are: Robert G. Bartlett, Secretary of Highways; Paul L. Thomas, District Engineer; Joseph Wade, Assistant District Engineer; John Auerbach, Highway Maintenance Sup't. 4; Oscar W. Kulp, Highway Maintenance Sup't. 1; Harry F. Snyder, Highway

on the night of August 6, 1969, his car plunged into a ten foot deep excavation in a public highway. Appellant alleges that the individual appellees were negligent in failing to barricade the excavation adequately, or to warn motorists of the excavation. Appellant also alleges the individual appellees were negligent in failing properly to supervise their subordinates to ensure that the excavation did not endanger motorists.[2]

■ The Court of Common Pleas of Bucks County dismissed the complaint against the Commonwealth on the doctrine of "sovereign immunity." In *Mayle v. Pennsylvania Department of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), we abrogated this doctrine. We therefore vacate the order of the Commonwealth Court affirming the order of the trial court dismissing the complaint against the Commonwealth.

■ The Court of Common Pleas dismissed the complaint against the individual appellees on the doctrine of "official immunity."[3] Because the complaint alleged "mere negligence," the Commonwealth Court affirmed.[4] We conclude that the liability of the individual appellees should not have been analyzed solely on the basis of their status as employees of the Commonwealth. We therefore vacate the order

Foreman; Eugene C. Schad, Highway Foreman. Also named as a defendant, but not involved in this appeal, is Protection Service, Inc.

2. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 204(a), 17 P.S. § 211.204(a) (Supp.1978).

3. This complaint was instituted before the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. IV, § 401, 17 P.S. § 211.401 (Supp.1978), gave the Commonwealth Court original jurisdiction over suits against the Commonwealth.

4. The Commonwealth Court stated that "high public officials" are absolutely immune for acts done within the scope of their authority and that other public employees are immune for such acts unless committed with malice, wantonness, or recklessness. The Commonwealth Court disposed of this case without deciding the status of the individual appellees.

of the Commonwealth Court and remand for proceedings consistent with this opinion.[5]

In recent years, we have declined to grant immunities when they proved ineffective in promoting their underlying policies. E. g., *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 388 A.2d 709 (1978) (sovereign immunity); *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973) (local government immunity); *Falco v. Pados,* 444 Pa. 372, 282 A.2d 351 (1971) (parental immunity); *Flagiello v. Pennsylvania Hospital,* 417 Pa. 486, 208 A.2d 193 (1965) (charitable immunity). In this case, too, an examination is required of whether the considerations underlying "official immunity" are effectively advanced.

In order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability. Where the nature of the servant's decision or action in question is such that it may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices. It is in the public interest to avoid such a chilling effect upon the servant's performance of his duties. Where, on the other hand, a standard of care may be defined and applied with relative ease, the public servant is not similarly deterred and the public interest in the protection of the official weakens. Also relevant to the strength of the public interest is the potential impact of the challenged decision or action upon the public as a whole or upon a large segment of it. The greater or more pervasive this impact, the stronger becomes the public interest in insuring unfettered decisionmaking.

*Yealey v. Fink,* 43 Pa. 212 (1862), demonstrates the importance of the public interest in insuring unfettered decisionmaking. In *Yealey,* township supervisors were held not liable for building a causeway which interfered with the

5. This case does not concern the immunities traditionally granted to legislators, see, e. g., Pa.Const. art. II, § 15; U.S.Const. art. I, § 6, or judges, see e. g., *Stump v. Sparkman,* 435 U.S. 349, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978).

flow of water to the plaintiff's mill. The supervisors had the responsibility of determining where and how roads should be built. This Court believed that they should be privileged to place and build the roads in the manner they saw fit, so long as their choice was not made maliciously, intending to injure another party. Public interest required the supervisors to be free to build roads in the safest manner and place them most conveniently "without being terrified with the apprehension of personal responsibility, if their acts should result in harm to any private property." 43 Pa. at 212.

 Consistent with the interest in unimpaired decisionmaking, we believe it appropriate to protect from the possibility of suit a public servant who has not himself engaged in actionable conduct. Thus, those in the "chain of command" should not be subject to suit on any theory of vicarious responsibility. Compare *Commonwealth ex rel. Oris v. Roberts,* 392 Pa. 572, 141 A.2d 393 (1958) (absent allegation that supervisory procedures were inadequate, prothonotary not liable for subordinate's failure to file lien); *Hirysh v. State,* 376 Mich. 384, 136 N.W.2d 910 (1965) (police chief not liable for incident which he did not have knowledge of, participate in, or direct); and *Spielman v. State,* 91 N.W.2d 627 (N.D.1958) (Highway Commissioner not liable for negligent driving of Highway Department employee in absence of his own negligent conduct), with *Fernelius v. Pierce,* 22 Cal.2d 226, 138 P.2d 12 (1943) (city manager and chief of police liable for negligently failing to fire police officers known for brutality) and *Martinez v. Cahill,* 215 Cal.App.2d 823, 30 Cal.Rptr. 566 (1963) (deputy police chief may be liable for failure to supervise properly or to transfer officers who operated jail improperly). If a public servant engages in actionable conduct in the performance of his duties, only he and the Commonwealth, his ultimate employer, are subject to suit.

As in *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968), consideration must also be given to whether the party seeking relief has improperly failed to pursue existing, available

remedies. In *Jonnet,* this Court held that township supervisors could not be held liable for wrongfully refusing to grant a building permit. The relevant statute provided for an administrative appeal from the refusal of township supervisors to grant a building permit, but the plaintiff had not appealed. This Court stated that a plaintiff should not be allowed to recoup losses he might have avoided by taking an available administrative appeal. 431 Pa. at 61, 244 A.2d at 753. Rules of law applicable in similar situations should also be examined, including, for example, those relating to the conduct of officials of local government. *Dean v. New Milford Township,* 5 W. & S. 545 (Pa.1843) (township supervisors liable for their negligence in failing to assure safe roads); *Kiel v. DeSmet Township,* 242 N.W.2d 153 (S.D.1976) (township supervisor liable for negligent posting of road warning signs).

■ Where, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted in shielding a defendant from liability, and the plaintiff has not failed to pursue existing remedies, denial of the possibility of recovery is unjustified. Cf. e. g., *Jackson v. Kelley,* 557 F.2d 735 (10th Cir. 1977) (army doctor liable for negligent malpractice because, although discretionary, choice between methods of treatment does not involve government policymaking requiring special protection); *United Air Lines v. Weiner,* 335 F.2d 379, 397–98 (9th Cir.), cert. denied, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964) (while military authorities may have absolute discretion concerning when and where to fly, officer liable for negligently failing to warn civilian aviation); *Upchurch v. Clinton Co.,* 330 S.W. 428 (Ky.1959) (County Commissioners, who had broad discretion in executing duty to establish dog pound held liable for damage caused by wild dogs when no pound was established).

Our approach patterns closely that fashioned by the Supreme Court of the United States in *Butz v. Economou,* —— U.S. ——, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). *Butz* broadened the scope of liability of employees of the execu-

tive branch of federal government to include federal officers' acts infringing constitutional rights. But *Butz* did not eliminate all immunities of all federal executive officers, and likewise we do not today abrogate all immunities of all state officials. Compare e. g., *Barr v. Matteo,* 360 U.S. 654, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959) (agency head held immune from suit for defamation despite allegation of malice); *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 184 U.S.App.D.C. 397, 566 F.2d 289 (1977) (en banc, per Leventhal, J.) (following *Barr*), cert. denied, —— U.S. ——, 98 S.Ct. 3144, 57 L.Ed.2d 1160 (1978).

Several times in recent years we have declined to follow easily-applied but unjust doctrines in favor of rules which, though requiring case-by-case determinations, more often produce equitable results. E. g., *Neiderman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970) ("impact rule"). Mr. Justice Nix, speaking for this Court in another context, recently emphasized the advisability of refraining

"from attempting to fashion broad general rules as a panacea. The obviously wiser course is to resolve disputes on a case-by-case basis until we develop, through experiences in [an] area, a sound basis for developing overall principles."

*Pennsylvania Labor Relations Board v. State College Area School District,* 461 Pa. 494, 500, 337 A.2d 262, 265 (1975). We adhere to this view today. The determination of the substantive liability of the individual appellees presently before us remains for further proceedings.

Order of the Commonwealth Court vacated and case remanded to Commonwealth Court for proceedings consistent with this opinion.

LARSEN, J., joins the Opinion of the Court and filed a concurring opinion.

O'BRIEN and POMEROY, JJ., would affirm the order of the Commonwealth Court as to the Commonwealth of Pennsylvania for the reasons set forth in *Mayle v. Pennsylvania Department of Highways,* 479 Pa. 384, 406, 408, 388 A.2d

709, 720, 721 (1978) (O'Brien, J., dissenting; Pomeroy, J., dissenting). In all other respects, O'BRIEN and POMEROY, JJ., join the opinion of the court.

EAGEN, C. J., filed a dissenting opinion.

NIX, J., filed a dissenting opinion.

EAGEN, Chief Justice, dissenting.

Prior to today's decision, official immunity in Pennsylvania could be divided into two types, namely, absolute immunity and limited or conditional immunity. Absolute immunity could be invoked by "high ranking officials" acting within the scope of their authority and within the course of their duties or powers. *Matson v. Margiotti,* 371 Pa. 188, 88 A.2d 892 (1952); *Montgomery v. Philadelphia,* 392 Pa. 178, 140 A.2d 100 (1958); *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968). Limited immunity could be invoked by other officials acting within the scope of their authority and within the course of their duties or powers. *Burton v. Fulton,* 49 Pa. 151 (1865); *Yealy v. Fink,* 43 Pa. 212 (1862). See *Montgomery v. Philadelphia,* supra.

Absolute immunity "foreclose[d] the possibility of suit," *Montgomery v. Philadelphia,* supra, 392 Pa. at 183, 140 A.2d at 103, so that the fullest "protection of society's interest in the unfettered discharge of public business," *id.,* might be afforded "high ranking officials." Limited immunity did not foreclose the possibility of suit against other officials because it could be overcome by an allegation in the plaintiff's complaint that the conduct complained of was malicious, wanton, or reckless, *Burton v. Fulton,* 49 Pa. 151 (1865); but, absent such an allegation and proof, the official was immune from suit.

While absolute and limited immunity reflect differing degrees of protection against suit, both reflect a determination and policy indicating a need for such protection for public officials in order to protect "society's interest in the unfettered discharge of public business." *Montgomery v. Philadelphia,* supra, 392 Pa. at 183, 140 A.2d at 103. This need has not dissipated with the passage of time. Indeed,

Mr. Justice Roberts reiterated a recognition of this need in his concurring and dissenting opinion in *Freach v. Commonwealth*, 471 Pa. 558, 575, 370 A.2d 1163, 1171 (1977), when he stated that:

> "Commentators differ widely on how broad the immunity extended to public officials should be . . . but agree that some form of immunity is necessary."

Further, the Superior Court has, of late, recognized the importance of this need when it stated:

> "If we were to agree with appellants and abolish conditional immunity for public officials, we fear progress would be placed in a permanent holding pattern wherein no advance would be made, but rather officials would be concerned solely with constantly re-checking what has already been done. Many of the benefits government now confers on the populace would stagnate."

*Lehnig v. Fulton*, 235 Pa.Super. 100, 105, 340 A.2d 564, 566 (1975). Thus, there can be little doubt that a need to protect public officials continues to exist. Indeed, the majority opinion recognizes this fact since it refrains from completely abolishing official immunity and disallows the application of vicarious liability for those in the "chain of command." Still, I am compelled to dissent from the action of the majority because it apparently adds a condition precedent, in addition to those previous set forth, to an effective assertion of immunity by officials, and the additional condition is undefined and vague. This, in itself, will impede officials and thereby foster precisely the evil official immunity attempts to avoid.

First, the majority seems to be saying that official immunity can still be invoked where the standard of care is "unpredictable," but may not be invoked where a standard of care can be "defined and applied with relative ease." This is so, reasons the majority, because, where the standard of care is "predictable," liability will not be "unpredictable." Can it be that the majority is suggesting the courts of this Commonwealth in applying the law of torts have been imposing an unpredictable standard of care on our citizens

and thereby subjecting them to unpredictable liability? Such a suggestion will certainly come as a shock to the insurance industry which has been setting rates based on predictable liability for the private sector.

Furthermore, I fail to understand how a public servant's performance will not be impaired in circumstances where "the standard of care may be defined and applied with relative ease," when the majority gives no indication whatsoever what type of conduct can or cannot be measured against a standard of care which can be defined and applied with ease.*

Second, the majority apparently leaves to a case-by-case determination those situations which do or do not evidence conduct which can be measured against an easily defined standard of care. This process in and of itself leaves the liability of officials unpredictable not only presently, but also for an indeterminable length of time.

Furthermore, by here remanding to the Commonwealth Court, the majority evidences its own inability to determine whether the conduct involved herein, when considered with the status of the officials, does or does not constitute conduct which can be measured against an easily defined standard of care.

Finally, since the majority now predicates immunity, at least in part, on the nature of the conduct in which an official is involved at a particular time, each and every official, whose duties and thus conduct varies, will by today's decision be left in a quandary as to what particular conduct he engages in at any particular time will allow him to assert immunity and what particular conduct will not. This set of circumstances will certainly enhance the unpredictability of

* If the majority is adopting the discretionary-ministerial distinction to determine what conduct warrants granting official immunity, it is an action which will only add to the unpredictability of liability because only inconsistency can be expected from a distinction which has been characterized as difficult, *Ham v. Los Angeles County*, 46 Cal.App. 148, 162, 189 P. 462, 468 (1920), if not impossible, Prosser, Torts 132, p. 990 (4th ed. 1971), to draw and because the distinction states a result rather than a method of analysis. L. Jaffe, Judicial Control of Administrative Action, p. 240 (1965).

liability, and thereby advance precisely the evil immunity seeks to avoid.

I dissent.

NIX, Justice, dissenting.

In this appeal the validity of our doctrine of immunity insulating the possible tortious conduct of public officials and public employees is being challenged. For the reasons that follow I cannot accept the view that official immunity should be abolished or modified at this time.

At the outset it is important to focus upon the purpose sought to be achieved by immunizing public servants from exposure to personal liability for their alleged torts. The doctrine of immunity was not fashioned to protect the indolent, malicious or careless servant from responsibility for the harm caused by his tortious behavior occurring in the course of the performance of his duties. To the contrary, it was designed to free the dedicated and innocent public servant from the spectre of unending vexious litigation. Most of the criticism of a concept of official immunity is premised upon an assumption of official malice, wrongdoing, unreasonableness or illegality. *See* James, *Tort Liability of Governmental Units*, 22 U.Chi.L.Rev. 610, 647 (1965). Proceeding from this perspective, a condemnation of such a doctrine would be justified. However, when we view the doctrine in light of the true purpose it seeks to achieve, i. e., to prevent impeding the decision-making and policy-determination required in the operation of government, the validity of the objective of the concept cannot be disputed. Thus, any fair and useful appraisal of the doctrine must begin with a recognition of the societal need it seeks to fulfill. Judge Learned Hand explained the raison d'être of official immunity as follows:

> It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in

practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.

*Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949).

To argue that the public servant should be held liable to the same standard as his counterpart in the private sector ignores the distinct differences that exist between the two. Liability predicated upon the principles of respondeat superior or allegations of negligence because of inadequate supervision must reflect the dilution of control of the conduct of a subordinate in the public sector because of the restrictions imposed by civil service and tenure laws. The superior often has little if any input into the hiring of his subordinate. The power to discipline is usually circumscribed by inflexible regulations and ponderous procedures.

Even when we consider the conduct of the public official himself, it is not valid to conclude that the procedure employed to judge the action of one in the private sector is appropriate. It is one thing to allow a jury to determine that a private defendant did or did not act reasonably, it is quite another to permit a jury to have the final say as to the reasonableness of the acts of public officials in the exercise of their authority and discretion. Permitting the former has direct impact only upon the private litigants; permitting the latter has the effect of vesting in juries the right of final approval or disapproval of the conduct of government. Notwithstanding my considerable respect for the judgment of juries, the ultimate assessment of governmental action is properly reposed in all of the citizens of this Commonwealth.

Further, I have never ascribed to the view of change for change's sake. I am not persuaded that there is a need to abandon the long-standing principles that have governed

this area. In view of our recent decisions that have eliminated sovereign immunity, *Mayle v. Pa. Dept. of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), and local government immunity, *Ayala v. Phila. Board of Education*, 453 Pa. 584, 305 A.2d 877 (1973), we are not presented with the concern that the injured victim will be left without redress.[1] As a practical matter the governmental unit would be the target defendant even if we were to accept the invitation to discard official immunity and expose the public servant to personal liability.[2] Thus a continuation of the application of the traditional doctrine of official immunity is not subject to the criticism that it will produce inequitable results. The majority expresses concern that the immunity is based upon their status as employees of the Commonwealth. I am not trou-

1. The mere fact that a servant is immune from personal liability does not negate the vicarious liability of the principal when the liability is based on the doctrine of respondeat superior. In *Koontz v. Messer*, 320 Pa. 487, 181 A. 792 (1935), it was held that a principal may not raise an agent-husband's immunity from suit as a defense to a wife's action based on respondeat superior. This holding in *Koontz* was reaffirmed in *Daly v. Buterbaugh*, 416 Pa. 523, 207 A.2d 412 (1964).

 Comment b to the Restatement (Second) of Agency § 217 (1958) explains the principle and provides illustrations thereto:

 > Immunities, unlike privileges, are not delegable and are available as a defense only to persons who have them. Thus, although a child may not have a civil action against his father for an excessive beating, he has one against a servant who administers such a beating at the command of the father. . . . On the other hand, where the principal directs an agent to act, or the agent acts in the scope of employment, the fact that the agent has an immunity from liability does not bar a civil action against the principal. Thus, where a servant in the scope of employment negligently runs over his wife, an action against the master by the injured wife is not barred. This result is in accordance with the rule stated in this Section and is the rule adopted in most of the states.

 In light of all of the foregoing, it is obvious that an individual who is injured by a public official in the course of his public duties is no longer without a remedy. Accordingly, abrogation of governmental and sovereign immunities has undercut the emotional appeal of arguments stressing the unfairness occasioned by the bar official immunity presents to suits by private parties against public servants.

2. If the immunity was removed it is to be expected that the governmental unit would provide the insurance for the payment of claims against its employes. Thus, ultimately it would be the governmental unit that would bear the risk of loss even where the individual was exposed to personal liability.

bled by this fact when there is an unquestioned societal need to provide such protection to one in that status. Government cannot be expected to function effectively when its agents are "terrified with the apprehension of personal responsibility, if their acts should result in harm" to another. *Yealey v. Fink*, 43 Pa. 212, 218 (1862).

The majority suggests that we examine the need for the immunity on a case-by-case basis. Such an approach defeats the underlying purpose of immunizing conduct. Unquestionably, there is wisdom in a case-by-case approach when the law enters a new area with which we have no familiarity. *See, e. g., Penna. Labor Relations Board v. State College Area School Dist.*, 461 Pa. 494, 337 A.2d 262 (1975). However, to create uncertainty in a formerly settled area produces anxiety here that the use of immunity was designed to eliminate.

I dissent.

LARSEN, Justice, concurring.

I join with the majority opinion. There is not, nor has there ever been, any reason for employees of the Commonwealth to be immune from lawsuits for their negligent behavior, while at the same time, all other employees (employees of private employers) have been, and are, subject to lawsuits for their negligent behavior. All citizens should be treated equally.