# Deltar Development, Inc. v. Kreger

*Beckley & Madden*, for plaintiff.
*Mark S. Love* and *Benjamin E. Zuckerman*, for defendant.

WILLIAMS, *S.J.*, July 30, 1979—Plaintiff, Deltar Development, Inc., has brought this action in trespass against Jeff Kreger, the Sewage Enforcement Officer of Polk Township, Monroe County, Pennsylvania, by a complaint wherein it is alleged that defendant tortiously interfered in contractual relations which existed between plaintiff and two other persons, Ernest H. Thompson and Elaine R. Thompson, his wife. The background against which the alleged incident transpired is marked by the enactment of section 7.1, added to the Pennsylvania Sewage Facilities act of January 24, 1966, P.L. (1965) 1535, as amended by section 2 of the Act of December 2, 1976, P.L. 1264, 35 P.S. §750.7a, effective on January 31, 1977, which provided:

"Land Sale Contracts—(a) Every contract for the sale of a lot as defined in section 2 for which there is no currently existing community sewage system available shall contain a statement in the contract clearly indicating to the buyer [1] that there is no community sewage system available and [2] that a permit for an individual sewage system will have to be obtained pursuant to section 7. The contract shall also clearly state [3] that the buyer should contact the local agency charged with administering this act *before signing the contract* to determine the procedure and requirements for obtaining a permit for an individual sewage system if one has not already been obtained. . . .

"(b) Any contract for the sale of a lot which does not conform to the requirements of subsection (a) *shall not be enforceable by the seller against the buyer.* Any term of such contract purporting to waive the rights of the buyer to the disclosures required in subsection (a) shall be *void.*" (Bracketing and emphasis supplied.)

Nine months later, on October 16, 1977, Ernest H. Thompson and Elaine R. Thompson, his wife, executed a written agreement with plaintiff to purchase Lot No. 5 in Tall Pine Acres, Polk Township, Monroe County, Pa., for the sum of $8,995, of which $1,995 was to be paid at the time of signing the agreement and the balance of $7,000 was to be paid at settlement on or before November 21, 1977. The agreement did not contain any of the disclosures required by 35 P.S. §750.7a, but did contain the statement, "This property is guaranteed to be suitable for on-site sewage disposal system." In count I of the complaint (emphasizing malice), plaintiff avers:

"5. Subsequent to the execution of the Agreement for the Sale of Real Estate, Defendant, on or about October 30, 1977, acting beyond the scope of his authority as Sewage Enforcement Officer, accompanied Mr. and Mrs. Thompson to Plaintiff's office and informed Plaintiff's President, Pat De-Luca, that the site purchased by Mr. and Mrs. Thompson was unsuitable for an onsite sewage system.

"6. Relying upon Defendant's statements that the site was unsuitable for an onsite sewage system, Mr. and Mrs. Thompson have refused to settle on the property and have demanded the return of their down payment."

Subsequently, at plaintiff's request, Lot No. 5 was inspected on or about November 21, 1977, by Robert J. Coloura, Registered Professional Engineer and Certified Sewage Enforcement Officer No. 237, and on or about May 15, 1978 by Paul E. Myers, Ph.D. Both tendered their reports to plaintiff that Lot No. 5 *was* suitable for on-site sewage disposal. Accordingly, plaintiff further avers:

"9. Defendant made the statements referred to in paragraphs 5 and 6 above, for the purpose of preventing settlement pursuant to the Agreement for the Sale of Real Estate and causing harm to Plaintiff.

"10. Defendant's statements were erroneous, malicious and beyond the scope of his authority as Sewage Enforcement Officer and without privilege or justification.

"11. Solely as a result of Defendant's acts, Plaintiff has been unable to complete the sale of Lot No. 5 of Tall Pine Acres and has thereby sustained damage in the amount of Eight Thousand Nine Hundred and Ninety-Five ($8,995.00) Dollars.

"12. Solely as a result of Defendant's acts, Plaintiff was required to expend sums of money to demonstrate that Defendant's statements were erroneous in the amount of Two Hundred ($200.00) Dollars."

In count II (emphasizing negligence), plaintiff incorporates Paragraphs 1 through 4 and 6 through 8 of count I by reference and further avers:

"15. Subsequent to the execution of the Agreement for the Sale of Real Estate, Defendant, on or about October 30, 1977, undertook to inspect Lot No. 5 of Tall Pine Acres for the purpose of determining if the site was suitable for an onsite sewage system.

"16. In conducting said inspection of Lot No. 5 of Tall Pine Acres, Defendant failed to make a probe hole but utilized instead a probe hole made in 1974.

"17. Defendant's inspection of Lot No. 5 of Tall Pine Acres was grossly negligent in that he utilized the 1974 probe hole which would not reflect the actual condition of the site as being suitable for an

onsite sewage system since the 1974 probe hole. contained leaf and other objectionable material which had accumulated since 1974."

In paragraphs 21 and 22, plaintiff reiterates the claim of damages first made in paragraphs 11 and 12.

Defendant's preliminary objections to the complaint comprise: (1) a demurrer to counts I and II, asserting in the broadest sense that plaintiff has failed to state a cause of action upon which relief may be granted, and (2) a motion to strike exhibits "B" and "C" as being evidential material improperly included in the complaint: Pa.R.C.P. 1019(a).

## I. INTERFERENCE WITH CONTRACTUAL RELATIONS AS A TORT

The elements of tortious interference with contractual relations have been described by the Supreme Court most recently in Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 482 Pa. 416, 429, 393 A. 2d 1175, 1181-1184 (1978), where Mr. Justice Roberts said:

"In Birl v. Philadelphia Electric Co., 402 Pa. 297, 167 A. 2d 472 (1961), this Court adopted Section 766 of Restatement of Torts and its definition of the right of action for intentional interference with existing contractual relations. [Footnote omitted] There, we stated:

"'At least since Lumley v. Gye (1853), 2 Ell. & Bl. 216, 1 Eng. Rul. Cas. 706, the common law has recognized an action in tort for an intentional, unprivileged interference with contractual relations. It is generally recognized that one has the right to pursue his business relations or employment free

from interference on the part of other persons except where such interference is justified or constitutes an exercise of an absolute right: Restatement, Torts, §766. The Special Note to comment m. in §766 points out: "There are frequent expressions in judicial opinions that 'malice' is requisite for liability in the cases treated in this Section. But the context and course of decision make it clear that what is meant is not malice in the sense of ill will but merely purposeful interference without justification." Our cases are in accord: Klauder v. Cregar, [supra:] Dora v. Dora [supra.]

" 'The elements of this tort of inducing breach of contract or refusal to deal, which must be averred in the complaint, are set forth in the Restatement, Torts, §766, which says, ". . . one who, without a privilege to do so, induces or otherwise purposely causes a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby". In other words, the actor must act (1) for the purpose of causing this specific type of harm to the plaintiff, (2) such act must be unprivileged, and (3) the harm must actually result.'

"402 Pa. at 300-301, 167 A. 2d at 474 (footnotes omitted)."

## II. INTERFERENCE WITH A VOIDABLE CONTRACT

Counsel for defendant assert that no action is maintainable for inducing breach of the agreement between plaintiff and the Thompsons because that agreement, lacking three elements required by statute *already* was "not enforceable by the seller against the buyer" under 35 P.S. §750.7a, supra,

before defendant had uttered any statement about on-site sewage disposal. The point is without merit for two reasons: (1) section 750.7a confers the right to void an agreement on the ground of statutory deficiency exclusively upon the *buyer*, and nothing in the record indicates that the Thompsons ever chose this ground as a basis for voiding the agreement. Defendant has no standing to exercise that choice for them: Restatement, 2d, Torts, §766, Comment (f). (2) Under the definition set forth in section 766 of the Restatement, 2d, Torts, quoted supra in Adler, Barish, 482 Pa. at 429, 393 A. 2d at 1182, tortious interference also may be accomplished by purposely causing a third person not to "enter into *or continue a business relation with another.*" (Emphasis supplied.) Assuming, arguendo, that the Thompsons *had* elected to void the agreement on the statutory ground after discovering that installation of an acceptable sewage facility wouild be unusually expensive, there remained a possibility that the parties might renegotiate the purchase price for Lot No. 5. This possibility could have been damaged, if not destroyed, by defendant's allegedly categorical statement that Lot No. 5 is unsuitable for on-site sewage disposal. A comparable situation was presented in Keiper v. All-American Realty Co., Inc., 70 D. & C. 2d 119, 122 (1975). There, liability was disclaimed on the ground that the two excavation contracts with which defendant allegedly interfered had not been signed by the parties. This court, after quoting the same language from Birl v. Philadelphia Electric Co., 402 Pa. 297, 300-301, 167 A. 2d 472, 474 (1960), which the Supreme Court reiterated in Adler, Barish, supra, 482 Pa. at 429, 393 A. 2d at 1182, said through President Judge Williams: ". . . [P]laintiff has pleaded interference impinging

upon his 'business relationship'—be it represented by a duly executed contract or by a merely inchoate contract—with the two general contractors, thus satisfying, *to this extent*, the requirements of section 766 [of the Restatement of Torts]." 70 D. & C. 2d 122. (Emphasis in original.)

Counsel for defendant suggest that contracts contrary to public policy, represented here by 35 P.S. §750.7a, are *generally* unenforceable and cite Albee Homes, Inc. v. Caddie Homes, Inc., 417 Pa. 177, 184, 185, 207 A. 2d 768, 772 (1965), where Mr. Justice (now Chief Justice) Eagen said:

"We agree with the conclusion of the Court of Appeals in Paramount Pad Co. v. Baumrind, 4 N.Y. 2d 393, 175 N.Y.S. 2d 809 (1958), that an action cannot be maintained for inducing the breach of a restrictive covenant which is contrary to public policy of the state. Cf. Restatements, Torts, §774 (Comment a: '. . . [C]ontracts in unreasonable restraint of trade are generally unenforceable . . .'). And our public policy permits the enforcement of restrictive covenants only if they are reasonably limited as to duration of time and geographical extent: Morgan's Home Equipment Corp. v. Martucci [390 Pa. 618, 136 A. 2d 838 (1957)], supra, and Plunkett Chemical Co. v. Reeve, 373 Pa. 513, 95 A. 2d 925 (1953)."

It will be seen that the public policy considered in Albee renders unenforceable only such restrictive covenants as exceed reasonable limits; here, the public policy expressed in 35 P.S. §750.7a renders unenforceable only such agreements to sell real estate as the buyers elect to avoid for statutory reasons.

## III. THE PROBLEM OF OFFICIAL IMMUNITY

Plaintiff's action for tortious interference has been brought, not against an ordinary member of the public, but against the Sewage Enforcement Officer of Polk Township, Monroe County. This presents the problem of determining what privileges and immunities, if any, attach to defendant by reason of his official status. The problem arises at a time when the entire spectrum of immunity for governmental entities and the individual persons who serve them as officers or employes has been undergoing re-evaluation. The Supreme Court abrogated the immunity of local governmental units in Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 587, 305 A. 2d 877, 878 (1973), and on July 14, 1978, abrogated the doctrine of sovereign immunity: Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 386, 388 A. 2d 709 (1978). On September 28, 1978, the Pennsylvania Legislature passed Act No. 1978-152, effective immediately, reaffirming the sovereign immunity of the Commonwealth of Pennsylvania, except where specifically waived by statutory provision. Section 5(a) of the Act of September 28, 1978, P.L. 788, 42 Pa.C.S.A. §5710, recited: "This act is intended to specifically respond to and prescribe limitations on the decision of Mayle v. Commonwealth, decided by the Supreme Court on July 14, 1978." The United States Court of Appeals for the Third Circuit reacted specifically to these developments in Skehan v. Board of Trustees of Bloomsburg State College, 590 F. 2d 470, 486-488 (3d Cir. 1978), by affirming a pre-Mayle ruling of the District Court on the subject of sovereign immunity. The Pennsylvania Supreme Court, in

Reinert v. Pennsylvania Department of Transportation, 482 Pa. 612, 614, 394 A. 2d 490, 491 (1978), reacted, without specifically referring to Act. No. 1978-152, in a per curiam opinion:

"Recent developments in this Commonwealth in the area of sovereign immunity which have occurred since the decision of the Commonwealth Court under review control the outcome of this appeal. Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A. 2d 709 (1978). This requires that we reverse the order of the Commonwealth Court and remand the case to that court for further proceedings."

The resolution of what appears to be a conflict of power between the judicial and the legislative branches of our government must await future development.

Writing from the vantage point of September 12, 1978—little more than two weeks before Act No. 1978-152 was enacted—District Judge Ziegler concluded that official immunity (absolute or conditional) remains the law of Pennsylvania and he declined to extend Mayle beyond its already sweeping ambit: Greenfield v. Vesella, 457 F. Supp. 316, 320-322 (W.D. Pa. 1978). He pointed out that official immunity may indeed expand, since the breakdown of the doctrine of sovereign immunity relieves the courts from the uncomfortable dilemma of choosing between leaving a deserving plaintiff without remedy or imposing liability upon an officer or employe ill-equipped to bear the loss, as suggested in 3 Davis, Administrative Law Treatise, §26.07 (1958).

On November 16, 1978, following a course pres-aged by Ayala and Mayle, the Pennsylvania Su-preme Court moved upon the sector of official im-munity: DuBree v. Com., 481 Pa. 540, 393 A. 2d 293, argued April 25, 1974; reargued January 18, 1978; reargument denied November 16, 1978. There, action had been brought to recover for in-juries and death of plaintiff's decedent who, at about 11:30 p.m. August 6, 1969, had been driving his automobile westerly along Street Road in Bucks County when his automobile plunged into an exca-vation or opening in the highway, approximately 20 feet wide and 10 feet deep. The complaint alleged failure to protect the excavation with adequate lights, signs or barricades to warn decedent of its existence, and named as defendants the Common-wealth, the Secretary of Highways, the district en-gineer and his assistant, the superintendent of maintenance and his assistant, two foremen, and a corporation which leased equipment to the Com-monwealth. The lower court sustained demurrers and dismissed the complaint as to the Common-wealth and the individual defendants: 22 Bucks 255 (1972). Plaintiff's appeal to the Superior Court was transferred to the Commonwealth Court, which affirmed: as to the Commonwealth on the ground of sovereign immunity; as to the Secretary of Highways, a "high public official" entitled to absolute immunity; and as to the remaining de-fendants, entitled to conditional official immunity, because of the absence of allegations that their conduct was intentionally malicious, wanton, or reckless: 8 Pa. Commonwealth Ct. 567, 303 A. 2d 530 (1973). On further appeal, the Supreme Court vacated the order and remanded the case to the

Commonwealth Court for proceedings consistent with the opinion, which included: (1) citation of Mayle, supra, abrogating sovereign immunity; and (2) new guidelines for the doctrine of official immunity. As to the second, Mr. Justice Roberts said:

"We conclude that the liability of the individual appellees should not have been analyzed solely on the basis of their status as employees of the Commonwealth . . .

"In order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability. Where the nature of the servant's decision or action in question is such that it may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices. It is in the public interest to avoid such a chilling effect upon the servant's performance of his duties. Where, on the other hand, a standard of care may be defined and applied with relative ease, the public servant is not similarly deterred and the public interest in the protection of the official weakens. Also relevant to the strength of the public interest is the potential impact of the challenged decision or action upon the public as a whole or upon a large segment of it. The greater or more pervasive this impact, the stronger becomes the public interest in insuring unfettered decisionmaking. . . .

"Consistent with the interest in unimpaired decisionmaking, we believe it appropriate to protect from the possibility of suit a public servant who has not himself engaged in actionable conduct. Thus, those in the 'chain of command' should not be subject to suit on any theory of vicarious liability . . . If

a public servant engages in actionable conduct in the performance of his duties, only he and the Commonwealth, his ultimate employer, are subject to suit. . . .

"Where, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted in shielding a defendant from liability, and the plaintiff has not failed to pursue existing remedies, denial of the possibility of recovery is unjustified. Cf. e.g., Jackson v. Kelley, 557 F. 2d 735 (10th Cir. 1977) (army doctor liable for negligent malpractice because, although discretionary, choice between methods of treatment does not involve government policymaking requiring special protection) . . .

"Several times in recent years we have declined to follow easily-applied but unjust doctrines in favor of rules which, though requiring case-by-case determinations, more often produce equitable results. E.g., Neiderman v. Brodsky, 436 Pa. 401, 261 A. 2d 84 (1970) ('impact rule'). . . ." 481 Pa. 543, 544, 545, 546, 547, 393 A. 2d 294, 295, 296.

From this, it appears that DuBree has not abrogated, but rather has emasculated, the doctrine of official immunity by redefining the extent of protection which it affords. The basic premise that the public has an important interest in unfettered decision-making by public servants, as illustrated in Yealy v. Fink, 43 Pa. 212 (1862), is still doctrine extended protection to public servants, acting within the scope of their authority, protection from *the fear of suit*; DuBree affords protection only from *the fear of suits based on unpredictable standards*. Commenting in his dissenting opinion, Mr. Chief Justice Eagen said:

"I am compelled to dissent from the action of the majority because it apparently adds a condition precedent, in addition to those previous [sic] set forth, to an effective assertion of immunity by officials, and the additional condition is undefined and vague. This, in itself, will impede officials and thereby foster precisely the evil official immunity attempts to avoid." 481 Pa. at 549, 393 A. 2d at 297.

The sequellae to DuBree include the following decisions:

Naddeo v. Com., _____ Pa. Superior Ct. _____, 395 A. 2d 1019, first case (1978)—Order of the Court of Common Pleas of Montgomery County, sustaining defendants' preliminary objections and dismissing the complaints in trespass, vacated and case remanded for further proceedings consistent with DuBree.

Raneri v. DePolo, _____ Pa. Commonwealth Ct. _____, 396 A. 2d 875 (1979)—Order of the Court of Common Pleas of Westmoreland County sustaining the demurrer of defendant, chief county detective, on the ground that he was a "high public official" entitled to absolute immunity from a defamation action brought by a county detective, vacated and case remanded for reconsideration in the light of DuBree.

Cerino v. Township of Palmer, _____ Pa. Superior Ct. _____, 401 A. 2d 770 (1979). There, on August 24, 1974, while additional defendant Elo was serving as township engineer for Palmer Township, Northampton County, certain excavation work for a township construction project was in progress near plaintiffs' home. Workmen allegedly pulled

loose a natural gas pipeline, causing gas to accumulate in plaintiffs' home and to explode, damaging the property and injuring one of the plaintiffs. Action was brought against UGI Corporation, owners of the pipeline, and the township. The township then brought in as additional defendants the excavation contractor and Elo, the township engineer. Elo filed an answer with new matter asserting his status as township engineer and then moved for judgment on the pleadings. The court granted the motion, holding that Elo was entitled to absolute immunity as a "high public official." On appeal, the Superior Court reversed and Judge Lipez said:

"Because we have concluded that the law of official immunity has been substantially altered by DuBree v. Commonwealth of Pennsylvania, 481 Pa. 540, 393 A. 2d 293 (1978), we reverse and remand for further proceedings. . . .

"DuBree requires that a public servant 'be free to exercise his judgment unhampered by the fear of *unpredictable* liability.' (Emphasis added). The exercise of professional engineering judgment will not be deterred in government service by the threat of liability for professional negligence any more than the same threat deters the exercise of such judgment outside of government. The standard of care used in determining questions of negligence is 'defined and applied with relative ease,' and therefore a public official would not be unduly restricted thereby in the performance of his official duties. See DuBree, supra, 481 Pa. 544, 393 A. 2d at 295." _____ Pa. Superior Ct. _____, 401 A. 2d 771, 774 (1979).

In the instant case, as in Cerino, supra, the applicable standards are not "unpredictable," but rather are quite simple and uncomplicated: (1) the truth or falsity of defendant's statement; and (2) if false, whether this resulted from (a) deliberate intention, or from (b) the careless drawing of a conclusion without the support of an adequate basis of fact. Since defendant has failed to establish the first prerequisite for obtaining official immunity of any descriptions, we are obliged to overrule his demurrer grounded upon that claim.


## IV. THE MOTION TO STRIKE

Stated in the most concise terms, the complaint presents a conflict of opinion. On the one hand, it is alleged that defendant expressed the opinion that Lot No. 5 *is not suitable* for on-site sewage disposal; on the other hand, plaintiff alleges that two experts, Robert J. Coloura and Paul E. Myers, Ph.D., expressed their opinions that Lot No. 5 *is suitable*. Plaintiff has sought to buttress these allegations by attaching, as Exhibits "B" and "C", copies of the reports submitted by the two experts. These are the exhibits which counsel for defendant have moved to strike as being in violation of Pa.R.C.P. 1019(a), which provides: "The material facts on which a cause of action or defense is based shall be stated in a concise and summary form."

In obedience to the Rule, paragraphs 5, 7 and 8 already have pleaded concisely one material fact: that there is a conflict of opinion as to the suitability of Lot No. 5 for on-site sewage disposal. Resolution of the ultimate issue—the truth or falsity of the

opinion expressed by defendant—must await the presentation of further evidence by discovery or at trial. Essentially, this should parallel the kind of evidence which the Thompsons would have been obliged to present if they had made formal application for a permit. In applying 25 Pa. Code §§73.1 through 73.141, it is important to know the dimensions of Lot No. 5 and the type of structure the Thompsons planned to erect. From this, the sewage flow may be calculated (section 73.91) and this figure, together with the result of six percolation tests to be made and spread uniformly over the proposed absorption area (section 73.62) will make it possible to calculate the required absorption area (section 73.64) which must be found within the dimensions of Lot No. 5. Without the aid of such evidence, it will be impossible to conclude that defendant was either right or wrong.

Exhibits "B" and "C" represent opinions tendered without the benefit of the above essential information. Since they serve no useful purpose at this stage in the proceedings, we shall order them stricken.

## ORDER

And now, July 30, 1979, it is ordered as follows:

1. Defendant's preliminary objections in the nature of a demurrer to the complaint are overruled.

2. Defendant's motion to strike exhibits "B" and "C" from the complaint is granted.

3. Defendant is directed to file an answer to the complaint within 20 days from the date of this order.