Commonwealth of Pennsylvania, Department of Environmental Resources, Petitioner *v.* South Middleton Township Board of Supervisors et al., Respondents.

Argued February 2, 1982, before President Judge CRUMLISH, JR. and Judges ROGERS, WILLIAMS, JR. and DOYLE.

*Lynn Wright,* Assistant Attorney General, for petitioner.

*Robert R. Black, Landis & Black,* for respondents.

*Thomas L. Wenger,* with him *Thomas W. Bergen, Wix, Wenger & Weidner,* for Amicus Curiae, Pennsylvania State Township Supervisors.

OPINION BY JUDGE ROGERS, March 28, 1983:

The Environmental Hearing Board (EHB), after a hearing, assessed a civil penalty in the amount of $2,000 against South Middleton Township, Cumberland County, for violating the terms of a permit issued by the Department of Environmental Resources

(DER) for the removal of heavy underbrush from a creek. The EHB declined also to assess civil penalties against the township secretary-treasurer and the township supervisors, on the ground that these persons were entitled to official immunity. DER has appealed[1] the EHB's order refusing to assess penalties against the individual respondents.

The application for the permit stated that heavy equipment would be used but would not be permitted to enter the stream bed without prior approval and the permit issued was for work to be done in accordance with the application. In the course of the work in the presence of the secretary-treasurer and one of the supervisors and with the knowledge of another supervisor, the contractor used a bulldozer in the stream bed, removing part of an island, excavating gravel and conducting other earth-moving activities along the stream bed all of which caused erosion and sedimentation and, in short, polluted the creek.

Section 605 of The Clean Streams Law, Act of June 22, 1937, P.L. 1987, *as amended,* 35 P.S. §691.605 provides:

> In addition to proceeding under any other remedy available at law or in equity for a violation of a provision of this act, rule, regulation, order of the department, or a condition of any permit issued pursuant to this act, the department, after hearing, may assess a civil penalty upon a person or municipality for such violation. Such a penalty may be assessed whether or not the violation was wilful. The civil penalty so assessed shall not exceed ten thousand dollars ($10,000) per day for each violation. In determining the amount of the civil penalty the department shall consider the wilfullness of the

---

[1] This matter was reassigned to the writer on November 16, 1982.

violation, damage or injury to the waters of the Commonwealth or their uses, cost of restoration, and other relevant factors.

We agree with DER that the doctrine of official immunity has no application to this action brought by the Commonwealth in enforcement of a positive direction of a statute founded in the state's police power to protect the public interest. The enforcement action here sought, a civil penalty, is, as noted provided by the statute.

The doctrine of official immunity is of judicial creation. It applies in civil suits against public officials by private persons complaining of injuries inflicted as the consequence of allegedly tortious performances of official duty. The basis of the doctrine has been described by Justice, now Chief Justice ROBERTS, in *Dubree v. Commonwealth,* 481 Pa. 540, 544, 393 A.2d 293, 295 (1978), as follows:

In order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability. Where the nature of the servant's decision or action in question is such that it may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices. It is in the public interest to avoid such a chilling effect upon the servant's performance of his duties.

Obviously, public officials who have executed, or agreed to the execution of an application for a permit expressly representing that no heavy equipment would enter a stream and who are put in possession of a permit conditioned upon the performance of work in accordance with the application are entitled to no freedom to "exercise . . . judgment unhampered by the fear of *unpredictable* liability," nor are they confronted with a "decision or action which may not be

measured against a *predictable* standard of care," where the statute under which the permit was applied for and issued provides that a violation of the permit may be subject to the assessment of civil penalty. Here what was required, compliance with the application and permit, is perfectly clear, and the liability for noncompliance, the imposition of civil penalties, was certainly predictable, if not expectable.

With respect to legislation concerning the environment, civil rights, and public employer-employee relations, as examples, public officials, being in the main the persons whose conduct is regulated, are the usual and proper defendants in enforcement actions by the administrative agencies; and it would clearly be inimical to the public welfare sought to be promoted by those laws to provide public officials with immunity for their actions contrary to the explicit commandments of the legislation—just as surely as it would be inimical to the public safety to give them immunity from punishment for violating the criminal laws.[2]

The individual respondents contend that they are not persons defined in Section 1 of The Clean Streams Law, 35 P.S. §691.1 as "any natural person . . . not [excluding] the members of an association and the directors, officers or agents of a corporation." We agree with the EHB that this contention is without merit.

The order of the EHB is reversed insofar as it relates to the secretary-treasurer and township supervisors and the record is remanded for further proceedings consistent with this opinion and The Clean Streams Law; jurisdiction relinquished.

---

[2] Research has revealed no case except this one in which official immunity was asserted to shield a public official from imposition of a civil penalty provided for a volation of a statute such as The Clean Streams Law; and none where it was allowed.

## ORDER

AND Now, this 28th day of March 1983, the order of the Environmental Hearing Board dated December 10, 1980 is reversed insofar as it relates to the township secretary-treasurer and the township supervisors and the record is remanded for further proceedings consistent with this opinion and The Clean Streams Law. Jurisdiction is relinquished.

---

CONCURRING OPINION BY JUDGE DOYLE:

I concur in the result reached by the majority, but I agree with the position asserted by DER that the standard for determining immunity from suit of a public official was established by the Pennsylvania Supreme Court in *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978), filed on October 6, 1978, and that the actions of *each* township supervisor must be individually examined under that standard. Such an examination here might very well establish that the immunity defense is applicable to several supervisors because their particular participation, *i.e.,* approval of the application for a permit to DER, was solely in a representative capacity and did not involve either direct or indirect supervision of the contractor. The imposition of liability on those individuals, based on this type of limited involvement, could not help but conflict with the basic premise of *DuBree* that

[i]n order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability. Where the nature of the servant's decision or action in question is such that it may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices. It is in the public interest to avoid such a chilling effect upon the servant's performance of his duties.

481 Pa. at 544, 393 A.2d at 295.