## Commonwealth v. Sherwood

*Martha Duvall,* assistant district attorney, for the Commonwealth.

*Raymond Bulson,* for defendant.

FINK, *P.J.,* October 31, 1985—Defendant, inter alia, at the period of time in question had purchased some timber rights on lands covering "the area in question". A stream or brook flowed through a portion of the land involved, and there is little question that a logging operation involved the movement of heavy equipment from the land down to the stream bed and across the stream to a nearby log-loading site which had been prepared and which was proximate to a dirt road. There is also little question that silt and mud, from time to time, particularly during and after a rain, would wash from the log-loading site down into the stream, as well as silt and mud being conveyed along the heavy ruts from the hill

on the other side of the stream down into the stream.

There was also little doubt from the evidence presented that lumbermen and equipment previously seen on other logging jobs of defendant were present at the site in the instant case. No proof was presented as to whether the loggers were "independent contractors" or whether they were defendant's employees. The circumstances brought out by the facts would tend to persuade this court as factfinder that they were, indeed, independent contractors.

Because of the silt and mud going into the stream at the log-loading site as aforementioned, throughout an indefinite period of time and to an indefinite extent, defendant was charged with violations of the Clean Streams Act.

There were four complaints filed against defendant arising out of the same set of alleged facts which transpired over a period of time. The first complaint charges "failure to develop, implement and maintain an Erosion and Sedimentation Control Plan for the timber harvesting operations at the Veley Tract, through which flows Peet Brook, a water of the Commonwealth; such failures constitutes a violation of the Pennsylvania Clean Streams Law, the act of June 22, 1937 P.L. 1987 as amended, 35 P.S. §691.402 and 691.611 and the Erosion Control Rules and Regulations of the Department of Environmental Resources at 25 Pa. Code 102.4(A)."

The second complaint charges "a failure to obtain a Water Obstruction and Encroachment permit, or waiver of same, to ford or otherwise create an obstruction to Peet Brook in the process of hauling or skidding logs at the Veley Tract", constituting a violation of the Dam Safety and Encroachment Act of November 26, 1978, P.L. 1375 as amended, 32 P.S.

§693.6 and 693.18 and §105.11 of the Dam Safety and Waterway Management Rules and Regulations at 25 Pa. Code, §105.11.

The third complaint charges that defendant committed acts "causing or allowing a discharge of industrial waste to Peet Brook, a water of the Commonwealth, resulting from the defendant's timber harvesting operations at the Veley Tract adjacent to Peet Brook in violation of the Clean Streams Law," 35 P.S. §691.301, 691.307, 691.401, 691.402(b), and 691.611.

The charges and counts in the three charges abovementioned, plus the fourth, were all amalgamated as follows:

First Charge: Failure to obtain permits;

Second Charge: Failure to maintain an Erosion Sediment Conrol Plan;

Third Charge: Causing discharge of industrial waste;

Fourth Charge: Failure to stabilize timber harvest site.

## FAILURE TO OBTAIN PERMITS

It will be noted that there are three separate sections alleged to be violated in the complaint concerning the above charge. 32 P.S. §693.6 states that, "no person shall construct, operate, maintain, modify, enlarge or abandon any dam, water obstruction or encroachment without the prior written permit of the department."

There was testimony that immediately above the stream crossing made by the timber operator, the stream was divided into two branches. The implication was that the two branches came about by man-made means. How the stream became divided was not proven to the satisfaction of this court as

factfinder, nor was there any evidence as to whether there was any connection between the two branches of the stream and the timber operation. It is clear that there was no other evidence indicating that there was any operation, maintenance, etc. concerning any dam, water obstruction, or encroachment connected with the timber operation other than the above, which was not connected in any way to said operation. The section above cited seems to set forth the gravamen of the "no permit" charge, and it is, therfore, unnecessary to refer to any additional sections cited.

We, therefore, are compelled to find defendant not guilty on the charge of failure to obtain permits.

## FAILURE TO MAINTAIN EROSION SEDIMENT CONTROL PLAN

There are, likewise, three sections to which reference is made to support the general charge of failure to develop an erosion and sedimentation control plan. The single section which appears to set forth the gravamen of this charge in its appropriate part reads as follows:

Section 691.402(a): "Whenever the department finds that any activity. . . including but not limited to the impounding, handling, storage, transportation, processing or disposing of materials or substances, creates a danger of pollution of the waters of the Commonwealth. . . the department may, by rule or regulation, require that such activity be conducted only pursuant to a permit issued by the department or may otherwise establish the conditions under which such activity shall be conducted, or the department may issue an order to a person or municipality regulating a particular activity. Rules and regulations adopted by the department pursu-

ant to this section shall give the persons or municipalities affected a reasonable period of time to apply for and obtain any permits required by such rules and regulations."

Section 691.402(b): "Whenever a permit is required by rules and regulations issued pursuant to this section, it shall be unlawful for a person or a municipality to conduct the activity regulated except pursuant to a permit issued by the department."

Appearing at the hearing was the Director of the Potter County Conservation District and a representative of the Pennsylvania Department of Environmental Resources. The testimony indicated that the representative of the County Conservation District, upon receiving a complaint, contacted defendant and requested that he submit a control plan for the operation at Peet Brook. Defendant did not favorably respond, which caused a referral to DER. That agency again contacted defendant and again requested a control plan to be presented. There was no affirmative response until an informal hearing was held in the County Conservation Office at which time defendant did submit a control plan.

The time between when defendant was first asked to submit until the time of actual submission at hearing was several months. In the meantime, the operation was continuing.

This court would further point out that as far as section 691.402 is concerned, there is a requirement that "the department" make a finding that a permit is needed under this section. It is questionable whether or not there is any evidence to indicate there was such a finding.

However, we next look to the next cited section in the second complaint, viz., §691.611. This refers to any failure to comply with any rule or regulation or a

failure to comply with any order or permit or license of the department, or to hinder, obstruct, prevent or interfere with the department or its personnel in the performance of any duty. There was ample testimony that defendant not only was not cooperative with the Director of the County Conservation District, who acts as a local agent for the DER, but that he swore at her and generally verbally mistreated her. This activity, however, was not charged although the section was cited.

This court, however, does find that the failure to submit a control plan within a reasonable time after request was made first by Mrs. Snyder, as local representative of the DER, and later by the DER representative from Harrisburg, would appear to violate the spirit of the two sections above quoted and also violated the sections as intended by our legislature. This court had the idea, obtained from the evidence presented, that defendant was given ample opportunity to comply with the request of the DER, which the court finds to be reasonable under the circumstances, and also finds that defendant failed to comply within a reasonable time.

This court, therefore, concludes that defendant is guilty of failing of comply with the rules and regulations of the department in that he failed to file an Erosion and Sedimentation Control Plan within a reasonable period of time after being requested by an agent of DER.

## CAUSING A DISCHARGE OF INDUSTRIAL WASTE

Industrial waste is defined in the act as:

". . . any liquid, gaseous, radioactive, solid or other substance, not sewage, resulting from any manufacturing or industry, or from any establishment, as herein defined, and mine drainage, refuse,

silt, coal, mine solids, rock, debris, dirt and clay from coal mines, coal collieries, breakers or other coal processing operations. Industrial waste shall include all such substances whether or not generally characterized as waste."

On the question of whether or not silt constituted by "soil wash" is industrial waste, within the definition above set forth, was addressed by the assistant district attorney in her presentation. Counsel cites the cases of National Wood Preservers, Inc. v. Department of Environmental Resources, 489 Pa. 221, 414 A.2d 37 (1980); Commonwealth v. Shippensburg Borough, 2 D.&C. 3d 417 (1977); Commonwealth v. Sechan Limestone Industries, 52 D.&C. 2d 10 (1970); and Commonwealth of Pennsylvania Department of Environmental Resources v. South Middleton Board of Supervisors, 73 Pa. Super. 142, 457 A.2d 1011 (1983). The third case is a lower court case out of Lawrence County. The facts of Sechan involve the discharge of silt and limestone water from a limestone mining operation in Lawrence County. Further, it was admitted by stipulation that defendant was not engaged in any coal operation. The holding of Sechan is that the definition of industrial waste goes beyond and is more inclusive than waste from coal mines.

This court agrees with the third case and may well have found the same as the Honorable Judge Henderson did, however, it is clear that silt and limestone mining water is much different than "soil silt" from the land adjoining the stream in which the silt is placed.

In the South Middleton case above cited, the issue had nothing to do with the definition of industrial waste but merely stands for the proposition that a board of township supervisors is a "person" within

the meaning of the act and that the doctrine of official immunity has no application to said board.

It is clear to this court that a discharge of silt such as in the instant case is *not* a discharge of "industrial waste" within the meaning of the act.

## FAILURE TO STABILIZE HARVEST SITE

Although there are at least five sections and subsections set forth in the complaint concerning the charge, of failure to stabilize, we would understand that the essence of the charge is set forth in 25 Pa. Code, §102.12 and also §102.22 and 102.23. As far as the first cited section is concerned, entitled "control measures" under the heading of "Erosion and Sedimentation Control Measures and Facilities," this court would understand that the code in this section merely sets forth the concerns which may properly be contained in a control plan to be filed by an earth-mover upon request of the department. As far as restoration is concerned through stabilization under §102.22 and interim control measures under §102.23 is concerned, again, it is this court's understanding that these are appropriate considerations to be included in the plan and to be considered prior to an application being granted. However, there is no specific penalty section connected with any of these particular sections or any other indications that a violation of these particular sections without an antecedent request by the department or a notice by the department is a violation.

Of further concern to this court is the issue of whether or not the owner of the timber rights, as opposed to an independent contractor who actually performs the work for such owner, is responsible for specific violations, assuming that the above quoted

sections were subject to specific violations. It would be this court's general thought that the owner of timber rights, viz., a party who contracts with the owner of the land for the right to sever timber therefrom under certain restrictions, is responsible only for obtaining the needed permits but it is otherwise up to the independent contractor to remove the timber for the owner of the timber rights under the terms of the permit that is granted or the plan that is submitted by the owner.

There is no evidence in the instant case sufficient to persuade this court that the persons actually performing the cutting were agents of defendant as opposed to independent contractors. As a matter of fact, quite to the contrary, the implication from the evidence would tend toward the conclusion that the persons cutting the timber were independent contractors who had contracted with defendant as the owner of the timber rights to remove the timber.

If the particular sections cited in the Pa. Code in and of themselves are specific violations, this court would be of the belief that the independent contractor, as opposed to the owner, would be responsible therefor. The court, therefore, must conclude that defendant must be found innocent of the charge of failure to stabilize timber harvest site.

Thus the following

## VERDICT AND ORDER OF SENTENCE

And now, October 31, 1985, defendant is hereby found guilty of the charge of failure to maintain an Erosion and Sedimentation Control Plan and innocent of the charges of failure to obtain permits, causing a discharge of industrial waste, and failure to stabilize timber harvest site.

The sentence of the court is that defendant shall pay a fine in the amount of $1,000 plus costs.