401 A.2d 770

Vito CERINO and Clara Cerino,

v.

TOWNSHIP OF PALMER, Appellant (at No. 1044),

and

UGI Corporation,

and

Heikki K. Elo, Additional Defendant-Appellee,

and

Anthony Casella, Additional Defendant-Appellant (at No. 1056).

Superior Court of Pennsylvania.

Submitted Sept. 15, 1978.

Decided April 6, 1979.

2

Joseph F. Leeson, Bethlehem, for Tp. of Palmer, appellant at No. 1044 and appellee at No. 1056.

George A. Hahalis, Bethlehem, for Anthony Casella, appellant at No. 1056 and appellee at No. 1044.

Robert C. Brown, Jr., Easton, and with him Charles H. Spaziani, Easton, for appellees Cerino.

Donald L. VanGilder, Allentown, for appellee UGI Corp.

Norman Seidel, Easton, and with him Daniel E. Cohen, Easton, for appellee Heikki K. Elo.

Before CERCONE, SPAETH and LIPEZ, JJ.

LIPEZ, Judge:

On August, 24, 1974, while additional defendant-appellee Elo was serving as Engineer for Palmer Township in Northampton County, certain excavation work in connection with a Township construction project in the vicinity of the plaintiffs' home was in progress. Workmen involved in the project allegedly pulled loose a natural gas pipeline leading into plaintiffs' home, causing gas to accumulate therein and explode, damaging plaintiffs' home and property and injuring one of the plaintiffs. Plaintiffs brought suit against UGI Corporation, owners of the pipeline, and the Township. The Township joined, as addition defendants, the excavation contractor, Anthony Casella (Casella), and the Township Engineer, Heikki K. Elo (Elo), alleging that any harm sustained by the plaintiffs was the result of the additional defendants' negligence. Elo answered and alleged in new matter that he had been acting as the duly-appointed Township Engineer. Elo moved, on the same day he filed his Answer and New Matter, for judgment on the pleadings. The court below granted Elo's motion, holding that Elo was

entitled to absolute immunity as a "high public official." This appeal has been brought by the Township and Casella. Because we have concluded that the law of official immunity has been substantially altered by *DuBree v. Commonwealth of Pennsylvania*, 481 Pa. 540, 393 A.2d 293 (1978), we reverse and remand for further proceedings.

The law governing civil immunity of local government officials has undergone considerable change since the court below ruled on Elo's motion. The Dissenting Opinion of Mr. Chief Justice Eagen in *DuBree* is most instructive as to the law of official immunity in Pennsylvania ante *DuBree:*

[O]fficial immunity in Pennsylvania could be divided into two types, namely, absolute immunity and limited or conditional immunity. Absolute immunity could be invoked by "high ranking officials" acting within the scope of their authority and within the course of their duties or powers. [Citations omitted]. Limited immunity could be invoked by other officials acting within the scope of their authority and within the course of their duties or powers. [Citations omitted].

Absolute immunity "foreclose[d] the possibility of suit," *Montgomery v. Philadelphia*, [392 Pa. 178, 183, 140 A.2d 100, 103, (1958)] so that the fullest "protection of society's interest in the unfettered discharge of public business," *id.*, might be afforded "high ranking officials." Limited immunity did not foreclose the possibility of suit against other officials because it could be overcome by an allegation in the plaintiff's complaint that the conduct complained of was malicious, wanton, or reckless. *Burton v. Fulton*, 49 Pa. 151 (1865); but, absent such an allegation and proof, the official was immune from the suit. 481 Pa. at 548, 393 A.2d at 296–97 (Eagen, C. J., dissenting).

In *DuBree*, plaintiff's decedent was killed when his car plunged into a ten foot deep excavation in a public highway. Plaintiff brought action for wrongful death against the Commonwealth and seven named officials of the Pennsylvania Department of Transportation. The complaint alleged that the defendants' negligence had been the

proximate cause of decedent's death. The trial court dismissed the counts against the Commonwealth on grounds of sovereign immunity, and those against the individual defendants on grounds of official immunity. The Commonwealth Court affirmed. The Supreme Court of Pennsylvania vacated the dismissal order as to the Commonwealth because the doctrine of sovereign immunity had been abrogated by that Court in *Mayle v. Penna. Dept. of Highways*, 479 Pa. 384, 388 A.2d 709 (1978), and vacated as to the named state officials and remanded, holding that "the liability of the individual [defendants] should not have been analyzed solely on the basis of their status as employees of the Commonwealth." *DuBree*, supra, 481 Pa. at 543, 393 A.2d at 294. The Court noted that, in recent cases, immunity of various kinds had not been granted when it was determined that the policy underlying it would not thereby be advanced.[1] The majority stated, "Several times in recent years we have declined to follow easily-applied but unjust doctrines in favor of rules which, though requiring case-by-case determinations, more often produce equitable results." The *DuBree* court then declared that, in each case where immunity is asserted, an examination is required as to whether the considerations underlying official immunity would be effectively advanced by allowing that doctrine to bar the plaintiff's suit.

The basic governing principle was stated by the *DuBree* court as follows: "Where, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted in shielding a defendant from liability, and the plaintiff has not failed to pursue existing remedies, denial of the possibility of recov-

1. *See, e. g., Mayle v. Pa. Dept. of Highways*, 479 Pa. 384, 388 A.2d 709 (1978) (sovereign immunity); *Ayala v. Phila. Bd. of Public Ed.*, 453 Pa. 584, 305 A.2d 877 (1973) (local government immunity); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971) (parental immunity); *Flagiello v. Pennsylvania Hospital*, 417 Pa. 486, 208 A.2d 193 (1965) (charitable immunity). *See also Brungard v. Hoffman*, 483 Pa. 200, 394 A.2d 1265 (1978).

ery is unjustified." [2] Although *DuBree* has now restricted grants of official immunity to a case by case basis, we believe that, where the defense of immunity from suit is asserted by or on behalf of any public servant, the threshold inquiry, as in pre-*DuBree* cases, must concern "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." [3]

In considering the instant case, therefore, we must determine the nature and scope of Mr. Elo's duties as Township Engineer, and the course of conduct in which he was engaged at the time of the alleged tortious act.

Palmer Township is a township of the second class. [4] The Second Class Township Code [5] allows the township supervisors to appoint a township engineer and to fix his compensation. [6] The township engineer's duties are specified as follows:

**2.** The Supreme Court also set forth certain guiding principles to be used in determining "whether the consideration underlying 'official immunity' are effectively advanced[:]"

A) It is in the public interest to avoid the chilling effect of the fear of unpredictable liability on a public servant's exercise of his duties. Where the actions of the public official cannot, by their nature, be measured against a standard of care, the potential litigation inherent in the taking of any decision may tend to discourage clear choice. But where a standard is known and may be easily applied, the public interest in the protection of the official's judgment is weaker. Finally, the greater or more pervasive the potential impact of the questioned action upon the public, the stronger the public interest in "unfettered decision making." B) "A Public servant who has not himself engaged in actionable conduct . . . should not be subject to suit on any theory of vicarious responsibility." C) "The party seeking relief should not improperly fail to pursue existing, available remedies, including administrative appeals and rules of law directly relating to the conduct of government officials." (See 481 Pa. at 545–546, 393 A.2d at 295–96).

**3.** *Montgomery v. City of Philadelphia*, 392 Pa. 178, 186, 140 A.2d 100, 105, (1958).

**4.** This was admitted by the Township in its answer to the Plaintiffs' complaint.

**5.** 53 P.S. § 65101 *et seq.*

**6.** 53 P.S. § 65585 provides:

The township supervisors may, at any time, appoint, by a vote of a majority of them, a township engineer who shall be a registered professional engineer and fix his compensation.

The township engineer shall perform such duties as the township supervisors shall prescribe as to the construction, reconstruction, maintenance and repair of all streets, roads, pavements, sewers, bridges, culverts, and other engineering work. He shall prepare plans, specifications, and estimates of all such work undertaken by such township, and shall, whenever required, furnish the township supervisors with reports, information or estimates on any township engineering work, or on questions submitted by any of them in their official capacity.

53 P.S. § 65586.

█ It is evident that the duties of the township engineer are specifically described by explicit statutory language, and that the engineer performs only those duties which he is expressly directed by the supervisors to perform. His duties are narrowly defined and limited and are not concerned with broad goals. We conclude, therefore, that Elo performed no policy-making function in the course of his employment as township engineer.[7]

---

**7.** The United States Supreme Court has had occasion to discuss the nature of "policy-making" positions in state government. In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), non-civil service employees of the Cook County, Illinois, Sheriff's Office sought to prevent their dismissal, which had been ordered for political reasons when a new administration took office. The court held that persons holding policy-making positions could be dismissed for political reasons, but that the dismissal of employees in positions not involving policy-making solely for political reasons would violate those employees' First and Fourteenth Amendment Rights.

On the issue of the difference between policy-making and non-policy-making, Mr. Justice Brennan, speaking for a plurality, stated:

"Non-policymaking individuals usually only have a limited responsibility . . . .. No clear line can be drawn between policymaking and non-policymaking positions. While non-policymaking individuals usually have limited responsibilities, that is not to say that one with a number of responsibilities is necessarily in a policymaking position. The nature of the responsibilities is critical. Employee supervisors, for example, may have many responsibilities: those responsibilities may have only limited and well defined objectives. An employee with responsibilities that are not well defined, or on a broad scope, more likely functions in a policymaking position. In

The Supreme Court in *DuBree* cited with approval, in connection with its consideration of whether a cause of action would lie for a defendant's alleged actions but for defendant's official status, the case of *Jackson v. Kelley*, 557 F.2d 735 (10th Cir. 1977). In *Jackson*, plaintiff, the dependent spouse of an air force officer, brought an action against defendant, an air force physician, for medical malpractice. The district court dismissed the suit on the grounds that the defendant, as a federal official acting within the scope of his official employment, was immune from such a suit. The Tenth Circuit reversed, holding that the doctrine of official immunity will not shield a defendant against liability for actions not involving governmental discretion.

The Court of Appeals first resolved the issue whether defendant's functions were discretionary:

> No foolproof measure of discretionary duties exists. . . Generally speaking, a duty is discretionary if it involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, *even if professional expert evaluation is required.* [Citations omitted.] The key is whether the duty is mandatory or whether the act complained of involved policy-making or judgment. For example, negligence in the construction of a government facility is nondiscretionary and subjects the government to liability under the [Federal Tort Claims Act].

557 F.2d at 737–78. (Emphasis added). The Tenth Circuit, analyzing previous cases involving negligent medical treatment in army hospitals, found that the federal courts had consistently held that medical treatment, although involving skill and training, was nondiscretionary. The court then applied these precedents to the case before it:

> [I]t is clear defendant's duty in treating plaintiff was nondiscretionary. He did not engage in planning or poli-

determining whether an employee occupies a policymaking position, consideration should also be given to whether the employee acts as an advisor or formulates plans for the implementation of broad goals." *Id.* at 367–68, 96 S.Ct. at 2687.

cy-making, but merely attempted to carry out the ministerial duty of caring for the plaintiff in a reasonable manner as he was obliged to do as an air force physician. Plaintiff's complaint merely charges the defendant with the negligent practice of medicine; it does not ask the district court to review a federal health policy decision made by defendant.

*Id.* at 738. The court then quoted the reasoning of a previous Tenth Circuit decision in order to distinguish between acts involving professional discretion and those involving government discretion:

[T]he significant factor is that the discretion exercised may have been medical rather than governmental. The chief policy underlying the creation of immunity for lower governmental officials is mainly that which stems from the desire to discourage [sic] "the fearless, vigorous and effective administration of policies of government." However, that policy is not applicable to the exercise of normal medical discretion since doctors making such judgments would face the same liability outside of government service as they would face if the complaint below is upheld. *A fortiori*, the threat of liability for negligence would not deter the fearless exercise of medical discretion within government service any more than the same threat deters the exercise of medical discretion outside of government. Holding government medical personnel to the same standards of care which they would face outside of government service in no way burdens their public responsibility or deters entry into government service or the vigorous exercise of public responsibility once having entered that service.

*Henderson v. Bluemink,* 167 U.S.App.D.C. 161, 163–64, 511 F.2d 399, 402–03, *quoted in* 557 F.2d at 738–39.

Considering, as did the Supreme Court of Pennsylvania in *DuBree,* the instant case in light of the above principles, it is readily apparent that Elo's actions did not involve govern-

mental discretion. Under the statutory definition of the office, a township engineer has no policy-making function whatever. He performs only those duties assigned to him by the township supervisors regarding construction and other engineering work. He is required by the statute to furnish to the supervisors, reports, information or estimates on township engineering projects, and to answer their official queries concerning such work. Even though Elo's supervision of the construction in the case before us may have called for his "professional expert evaluation," it is clear that his duties may be described simply as the "administration of a mandatory duty at the operational level," since a township engineer may only perform supervisory tasks as directed by the township supervisors. 53 P.S. § 65580. In carrying out this ministerial duty, the engineer may utilize his skill and training, as a professional engineer is obliged to do. The defendants' Complaint charges Elo with the negligent execution of his responsibilities as a professional engineer and in no sense involves township construction planning or policy. Since Elo, in exercising his normal engineering discretion, would be subject to liability outside of township service to the same extent as he would were appellant's complaint upheld, the policy behind the doctrine of official immunity, viz., the protection of the efficient administration of government policy, is inapplicable.

*DuBree* requires that a public servant "be free to exercise his judgment unhampered by the fear of *unpredictable* liability." (Emphasis added). The exercise of professional engineering judgment will not be deterred in government service by the threat of liability for professional negligence any more that the same threat deters the exercise of such judgment outside of government. The standard of care used in determining questions of negligence is "defined and applied with relative ease," and therefore a public official would not be unduly restricted thereby in the performance of his official duties. *See DuBree,* supra, 481 Pa. 544, 393 A.2d at 295.

A balancing of the gravity of harm to the individual citizen against the possible threat to effective government in the context of this case, as required by the Court of Appeals in *Jackson*,[8] does not change our result. In the case before us, the plaintiff's complaint alleges severe property damage, including the partial destruction of their home, and personal injury. The Supreme Court of the United States, in *Doe v. McMillan*, 412 U.S. 306, 93 S.Ct. 2018, 36 L.Ed.2d 912 (1973), held that damage to the plaintiffs' good names and reputations was harm sufficient to deny immunity to certain government officials. We conclude that the danger of substantial property damage and serious bodily injury or death which could be caused by engineering negligence, particularly where excavation in the vicinity of natural gas pipelines is concerned, is of at least equal gravity.

As to the countervailing factor of the possible contribution of immunity in this case to effective government, we adopt the language of *Jackson:*

> Effective government would not suffer excessively if monetary compensation were permitted because the alleged wrongful conduct does not involve politically sensitive judgments or discretionary governmental acts. Granting damages to plaintiff would not tend to construct government functioning in an area where prompt governmental actions and snap governmental judgments are essential.

557 F.2d at 739–40. In the case at bar, the burden on effective government does not outweigh the dangers to individual citizens of extensive property damage or severe personal injury or death resulting from negligence in the application of engineering judgment.

The challenged acts have virtually no impact upon the public as a whole or upon a large segment thereof. Elo was

8. 557 F.2d at 739. "We read *Doe v. McMillan, supra,* as requiring us to balance the consideration of harm to the individual citizen with the threat to effective government in the context of this case before granting or refusing to grant defendant official immunity." *Id.*

merely supervising engineering planning and construction in the field, and not setting government policy regarding such matters. *See DuBree*, supra, 481 Pa. 540, 393 A.2d at 295.

A motion for judgment on the pleadings will be granted only where the pleadings establish that, as a matter of law, the moving party must prevail. "[T]he court must take that view of the evidence most favorable to the party against whom the motion is directed, giving that party the benefit of all favorable inferences that might be reasonably drawn from the evidence, thereby placing the burden of proving the absence of any factual issue on the movant." *Lehnig v. Felton*, 235 Pa.Super. 100, 103, 340 A.2d 564, 565 (1975). The court below granted Elo's motion on the basis of Elo's unanswered allegation, that his actions were in the course of his official duties as Township Engineer.[9]

*DuBree* held that liability of officials such as Elo should not be analyzed solely on the basis of their official employment. *See* 481 Pa. at 543, 393 A.2d at 294. It is evident, therefore, that the mere allegation that Elo was acting pursuant to his position as township engineer is insufficient to establish, as a matter of law, that Elo is not liable. *See Miller v. Prudential Ins. Co. of America*, 239 Pa.Super. 467, 362 A.2d 1017 (1976).

The judgment of the court below is reversed and the cause remanded for further proceedings.

**9.** The lower court relied on *Montgomery v. City of Philadelphia,* supra, in concluding that Elo's official position involved policymaking functions. *Montgomery,* however, is distinguishable on two bases. That case involved a defamation action filed by a builder against the City Architect of Philadelphia, who made statements to the press disparaging plaintiff's work on city projects. Additionally, the duties of the Philadelphia City Architect are more complex and may involve actual policy-making, unlike those of the appointed engineer of a township of the Second Class which are restricted to the use of his professional abilities and training as directed by the township supervisors.