432 A.2d 231

**Benjamin ZDANIEWICZ, Appellant,**

v.

**James SANDS, George Russell and Everett Sickler.**

Superior Court of Pennsylvania.

Argued Jan. 7, 1981.

Filed July 10, 1981.

Petition for Allowance of Appeal Denied Oct. 27, 1981.

Brendan J. Vanston, Tunkhannock, for appellant.

Lawrence M. Ludwig, Scranton, for appellees.

Before PRICE, WIEAND and HOFFMAN, JJ.

WIEAND, Judge:

Are township supervisors subject to suit by a township policeman for allegedly defamatory statements made during a meeting of the board of supervisors at which the policeman's job performance was reviewed and criticized? The trial court held that the supervisors enjoyed immunity from an action in trespass for defamation and sustained preliminary objections in the nature of a demurrer. We agree and affirm.

According to the averments of plaintiff's complaint, at a public meeting of the Board of Supervisors of Tunkhannock Township on June 1, 1979, one of the supervisors, James Sands, directed the following statement to the plaintiff, Benjamin Zdaniewicz, who was then a township police officer.

"Well we are going to straighten up this police business. (Handing Zdaniewicz a police work schedule.) Well, you have seen this before. Why did you mess up the schedule by coming to work on Memorial Day? Do you want to quit the Township now? God damn it, Ben, you are in trouble. Why were you on duty on May 28?"

After plaintiff had responded, Sands continued:

"You are a liar. You had better have the names of the people who called you and asked you to work . . . you will not help (Patrolman) Ozzie Hudock. You will not work with the Borough Police and the State Police want nothing to do with you . . . I have gotten a lot of complaints, a lot of people have been bitching about you. Son of a bitch, Ben, you made a crazy u-turn on Route 307. You drove up on someone's lawn at Rivercrest for no reason. I don't want residents complaining to me when you picked up a couple of juveniles and turned them loose without doing anything about the damage they had done . . . You and me have had problems. I've been listening to you complain about everything. You did not want Hudock in, just your buddy. You are not going along with my ways, so there will be no more Chief. I am the boss. You will work a schedule just like Oz. Does that suit you, Ben, or do you want to quit the Township now?"

These words, alleged by plaintiff to be defamatory,[1] were spoken by Sands "intending to injure plaintiff and deprive him of his good name and reputation, and further wrongfully intending to cause plaintiff to be removed from his said employment." There is also a general averment that the "defamatory words and charges"[2] spoken by Sands were known to be untrue. The remaining defendants, George Russell and Everett Sickler, are also township officials, who allegedly published the defamatory material when they "ap-

[1]. The trial court did not decide whether the statements could have been found defamatory by a jury, and that issue has not been argued on appeal. Therefore, we express no opinion concerning this issue.

[2]. Plaintiff's complaint does not specifically identify the words and charges deemed defamatory and/or untrue.

proved and ratified" the minutes of the meeting at which Sands' remarks were made and recorded. Because of these utterances and charges, plaintiff alleges, he was demoted to the rank of patrolman and has been brought into "disgrace and disrepute." No special damages have been alleged.

The doctrine of "official immunity" has undergone substantial change as a result of the Supreme Court's decision in *DuBree v. Commonwealth*, 481 Pa. 540, 393 A.2d 293 (1978). The doctrine, however, has not been abandoned or overruled. "In order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability." Id., 481 Pa. at 544, 393 A.2d at 295. Consistent therewith, the Supreme Court specifically found "it appropriate to protect from the possibility of suit a public servant who has not himself engaged in actionable conduct. Thus, those in the 'chain of command' should not be subject to suit on any theory of vicarious responsibility." Id., 481 Pa. at 545, 393 A.2d at 295.

This is dispositive of plaintiff's action against Russell and Sickler. They engaged in no actionable conduct and, therefore, are immune from suit. They cannot be subjected to an action for defamation merely because they approved the secretary's minutes of the board meeting at which their fellow supervisor made the statements which plaintiff alleges to be defamatory.

A determination of the existence of the immunity asserted by Sands requires a further analysis of the changes effected by the *DuBree* decision. The Supreme Court there abandoned an approach to immunity based upon a classification of officials and employees and opted for "rules which, though requiring case-by-case determinations, more often produce equitable results." Id., 481 Pa. at 547, 393 A.2d at 296. This case-by-case determination must be made according to whether the decision or action of a public official can be "measured against a predictable standard of care." Where decisions or actions cannot be so measured, it is in the public interest to avoid the chilling effect of the possibility

of litigation which may tend to discourage decision making. "Also relevant to the strength of the public interest is the potential impact of the challenged decision or action upon the public as a whole or upon a large segment of it." Id., 481 Pa. at 544, 393 A.2d at 295. It can thus be seen that in determining the immunity of public officials a greater emphasis has been placed upon the nature of the decision or action which public officials or employees are called upon to make. The governmental status of the person sued will not be controlling. "Where, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted in shielding a defendant from liability, . . . denial of the possibility of recovery is unjustified." Id., 481 Pa. at 546, 393 A.2d at 296.

Under the principles announced in *DuBree*, it has been held that a township engineer is not immune from suit for negligently supervising engineering planning and construction in the field. *Cerino v. Township of Palmer*, 265 Pa.Super. 1, 401 A.2d 770 (1979). Similarly, a county public defender has been held not to be immune from an action in trespass for negligent misrepresentations made during a proceeding under the Mental Health and Mental Retardation Act. *Reese v. Danforth*, 486 Pa. 479, 406 A.2d 735 (1979). Neither the engineer nor the lawyer in these cases required "any more discretion, freedom, or encouragement to exercise his professional judgment and skill than does [a] privately retained . . ." engineer or attorney. Id., 486 Pa. at 489, 406 A.2d at 741 (Concurring Opinion by Roberts, J.). Other instances in which there will be no immunity include acts of malpractice by an army doctor, see: *Jackson v. Kelly*, 557 F.2d 735 (10th Cir. 1977), and the acts of federal officials by which they violate the constitutional rights of citizens. *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

██ The acts and decision for which the township supervisors assert immunity in the instant case were related to their duty to provide adequate and cost-effective police protection for residents of the township. Police protection is

an area of policy-making which requires the exercise of wide discretion and sound judgment. It is an area in which the nature of the supervisors' decisions and actions cannot be measured against a predictable standard of care. Few would question that the responsibility for providing police protection carries with it the right, if not the duty, to review the job performance of police officers employed by the township. When supervisors undertake to do so, the public interest demands that their exercise of judgment not be hampered by the fear of lawsuits by policemen whose performances have been found wanting. Immunity in such cases will serve a substantial public interest. The potential for harm to individuals employed as police officers, on the other hand, is slight.

In *Barr v. Matteo*, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959), an action for libel had been instituted by former employees of the Office of Rent Stabilization against the acting director because of statements made and contained in a press release. The director, acting within the parameters of his official duties, was held to be immune despite an averment of malice contained in the complaint. In declaring such immunity, the Court said:

"The matter has been admirably expressed by Judge Learned Hand:

" 'It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties.' . . . *Gregoire v. Biddle*, 177 F.2d

579, 581 (2nd Cir. 1949)." Id. at 571, 79 S.Ct. at 1339, 3 L.Ed.2d at 1441.

Similarly, in *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* 566 F.2d 289 (D.C.Cir.1977), a government official was held to have absolute immunity from an action for defamation based upon a letter written in the course of his official duties, in which he was critical of plaintiff's capabilities in the field of underwater archaeological excavation.

We conclude, therefore, that when township supervisors undertake an official review of the performance of those employees who have been assigned police duties, they have absolute immunity from suits for defamation. Such immunity defeats a suit at the outset. It does not depend upon the circumstances and motivations of the official's actions, so long as they are taken within the parameters of his official duty. Any other rule would have a "chilling, if not paralyzing, effect on an official's willingness to speak out, in the exercise of his discretion, to further the public interest." *Expeditions Unlimited Aquatic Enterprises, Inc. v. Smithsonian Institution,* Id. at 292.

The order of the trial court is affirmed.