## Corcoran v. Rizzo

*Philip R. Detweiler,* for plaintiff.
*Margaret S. Lurio,* for defendant.

LOWE, *P.J.*, April 15, 1986 — Plaintiff William F. Corcoran appeals from an order entered by this court dated February 25, 1986 sustaining defendant's preliminary objections in the nature of a demurrer and dismissing plaintiff's complaint.

The facts of record are as follows. Plaintiff was employed as a policeman by the Abington Township Police Department from March 13, 1967, until October 1982 when he was appointed chief of police by the Abington Township Board of Commissioners. On April 12, 1984, defendant Frank L. Rizzo, former police commissioner and mayor of the city of Philadelphia, was appointed by the commissioners to conduct a thorough investigation of the police department and make recommendations for improvement.

On June 7, 1984, defendant delivered his report titled "The Abington Police Department—A Study By Frank L. Rizzo" to the manager of Abington Township. Copies of the report were distributed to the commissioners, the Abington Township Solicitor, and the press. A public meeting of the commissioners convened June 21, 1984, at which defendant reported his findings and recommendations to the commissioners and to the community.

On August 13, 1984, plaintiff was demoted by the commissioners to the post of "noncommand captain." On December 31, 1984, plaintiff entered into a stipulation and agreement with the Township of Abington to settle all claims arising out of the events leading up to and culminating in the demotion of plaintiff. As part of this agreement, plaintiff resigned as captain and as a member of the police department.

On June 5, 1985, plaintiff commenced this action by filing a complaint alleging that defendant defamed him in the report and at the public meeting of the commissioners. Defendant filed preliminary objections in the nature of a demurrer on July 5, 1985. On July 19, 1985, plaintiff filed preliminary objections to defendant's demurrer. Oral argument, on plaintiff's preliminary objections was heard by the Honorable Louis D. Stefan on August 28, 1985, and said objections were dismissed by order dated August 29, 1985.

Plaintiff filed an answer to defendant's demurrer on October 25, 1985, and defendant filed preliminary objections to said answer on November 13, 1985. Oral argument on defendant's preliminary objections was heard by the undersigned on February 19, 1986. Defendant's demurrer was sustained by order of court dated February 25, 1986, and plaintiff's complaint was thereby dismissed.

Plaintiff now appeals to the Superior Court of Pennsylvania and raises several issues in the concise statement of matters complained of on appeal filed pursuant to Pa.R.A.P. 1925(b).

Initially, plaintiff contends that the August 29, 1985, dismissal of plaintiff's preliminary objections to defendant's demurrer was in error as a matter of law. This contention is both frivolous and devoid of merit. Plaintiff's notice of appeal filed March 14,

1986, clearly states that plaintiff is appealing the order entered by the undersigned on February 25, 1986. The order of August 29, 1985, is not mentioned in the notice and is otherwise inappropriate for appeal. Inasmuch as the order dismissed plaintiff's preliminary objections it was interlocutory in nature and therefore not appealable. *Matter of Phillips*, 471 Pa. 289, 370 A.2d 307 (1977); Pa.R.A.P. 301 and 311, 42 Pa.C.S. Furthermore, plaintiff has failed to comply with the guidelines of Pa.R.A.P. 903, 42 Pa.C.S., which mandate a 30-day period within which an appeal may be taken after the entry of an order.

Plaintiff next contends that the court erred in granting defendant's preliminary objections in the nature of a demurrer. Plaintiff states defendant is not entitled to absolute immunity and therefore is not protected from suit for the statements made in his report and at the public meeting of the commissioners. This contention is meritless.

In a civil action a preliminary objection in the nature of a demurrer is available to any party. Pa.R.C.P. 1017(b)(4), 42 Pa.C.S. The standard for granting such preliminary objections was reiterated in *Greenspan v. United Services Automobile Association*, 324 Pa. Super. 315, 317, 471 A.2d 856, 858 (1984):

"It is axiomatic in the law of pleading that preliminary objections in the nature of a demurrer admit as true all well and clearly pleaded material, factual averments and all inferences fairly deducible therefrom. *Yania v. Bigan*, 397 Pa. 316, 155 A.2d 343 (1959); *Byers v. Ward*, 368 Pa. 416, 84 A.2d 307 (1961). Conclusions of law and unjustified inferences are not admitted by the pleading. *Lerman v. Rudolph*, 413 Pa. 555, 198 A.2d 532 (1964). Starting from this point of reference the complaint must

be examined to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. If such is the case, the demurrer may not be sustained. On the other hand, where the complaint fails to set forth a cause of action, a preliminary objection in the nature of a demurrer is properly sustained."

The role of the court is to determine whether or not the facts pleaded are legally sufficient to permit the action to continue. *Firing v. Kephart*, 466 Pa. 560, 353 A.2d 833 (1976). Any doubt must be resolved in favor of overruling the demurrer. *International Ass'n of Firefighters, Local 2493 v. Loftus*, 80 Pa. Commw. 329, 471 A.2d 605 (1984).

In a libel case, the defense of absolute privilege may be raised by demurrer where defendant's privilege appears on the face of the complaint. *Greenberg v. Aetna Insurance Co.*, 427 Pa. 511, 235 A.2d 576 (1976); *DeSantis v. Swigart*, 296 Pa. Super. 283, 442 A.2d 770 (1980). Assuming, arguendo, that the statements complained of were defamatory, that they were made by defendant and that defendant was responsible for their publication, the applicability of the defense of absolute privilege may properly be considered.

In cases of defamation, the defense of privilege has as its genesis the notion that conduct otherwise actionable is to be privileged because defendant "is acting in furtherance of some interest of social importance, which is entitled to protection even at the expense of uncompensated harm to plaintiff's reputation." Prosser, *Torts*, 607 (Second Ed. 1955); quoted with approval in *Montgomery v. City of Philadelphia*, 392 Pa. 178, 181, 140 A.2d 100, 102 (1958). The Pennsylvania Supreme Court's effort to set forth the rationale is particulary illuminating:

"Even though the innocent may suffer irreparable damage, it has been found to be in the public interest and therefore sounder and wiser public policy to 'immunize' public officials, for to permit slander, or libel, or malicious prosecution suits, where the official's charges turn out to be false, would be to deter all but the most courageous or the most judgment proof officials from performing their official duties and would thus hinder or obstruct justice and allow many criminals to go unpunished." *Matson v. Margiotti,* 371 Pa. 188, 203, 88 A.2d 892, 899-900 (1952). The court then adopted the concept of "absolute privilege" and described it by stating:

"Absolute privilege . . . is unlimited and exempts a high public official from all civil suits for damages arising out of false defamation statements and even statements motivated by malice, *provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it is sometimes expressed, within his jurisdiction.*" (emphasis in original). Id., at 194, 88 A.2d at 895; cited with approval in *Montgomery v. City of Philadelphia,* supra, at 182-183, 140 A.2d at 103.

To determine whether an individual is to be afforded the protection of absolute privilege the courts first focused on whether the individual qualified as a high public official. This issue was explored in *Montgomery v. City of Philadelphia,* supra, where the court refused to articulate a definitive standard. Instead, the court suggested a case-by-case evaluation and stated, "[T]he determination of whether a particular public officer is protected by absolute privilege should depend upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions."

Id., at 186, 140 A.2d at 105. The court emphasized that the competing considerations of the evaluation must indicate the public interest demands the grant of absolute privilege. Id., at 187, 140 A.2d at 105.

Guidelines to determine the applicability of absolute privilege were most recently defined by the Pennsylvania Supreme Court in *DuBree v. Commonwealth,* 481 Pa. 540, 393 A.2d 293 (1978). The court again opted for a case-by-case approach and stated:

"[W]here the nature of the [public] servant's decision or action in question is such that it may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices. It is in the public interest to avoid such a chilling effect upon the servant's performance of his duties. Where, on the other hand, a standard of care may be defined and applied with relative ease, the public servant is not similarly deterred and the public interest in the protection of the official weakens. Also relevant to the strength of the public interest is the potential impact of the challenged decision or action upon the public as a whole or upon a large segment of it. The greater or more pervasive this impact, the stronger becomes the public interest in insuring unfettered decisionmaking." Id., at 544, 393 A.2d at 295; cited with approval in *Zdaniewicz v. Sands,* 288 Pa. Super. 420, 423-424, 432 A.2d 231, 233 (1981). The court shifted focus to the nature of the decision or action which public officials or employees are required to make and stated, "here, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted in shielding a defendant from liability . . . denial of the possibility of recovery is unjustified." *DuBree v. Commonwealth,* supra, at 546, 393

A.2d at 296.

Prior to *DuBree v. Commonwealth,* supra, the courts had found a wide variety of officials to qualify as "high public officials" and therefore entitled to absolute immunity. See *Jonnet v. Bodick,* 431 Pa. 59, 244 A.2d 751 (1968), (a township supervisor); *Montgomery v. City of Philadelphia,* supra, (the city architect and the deputy commissioner of public property); *Matson v. Margiotti,* supra, (the attorney general); *McCormick v. Spector,* 220 Pa. Super. 19, 275 A.2d 688 (1971), (a district attorney); *Schroeck v. Pennsylvania State Police,* 26 Pa. Commw. 41, 362 A.2d 486 (1976), (the state police commissioner and a state police captain); *Freach v. Commonwealth,* 23 Pa. Commw. 546, 354 A.2d 908 (9176), (a district attorney, an assistant district attorney, the superintendent of the parole division of the board of probation and parole, and the superintendent of the Fairview State Hospital), rev'd on other grounds, 471 Pa. 558, 370 A.2d 1163 (1977); and *Steffen v. Mainello,* 26 Cumb. L.J. 319 (1976), (a school district superintendent).

More recently, in focusing on the protection of the public interest, courts have declined to grant immunity when found ineffective in promoting the underlying policies. See *DuBree v. Commonwealth, supra,* (officials of the Pennsylvania Department of Transportation); *Cerino v. Township of Palmer,* 265 Pa. Super. 1, 401 A.2d 770 (1979), (a township engineer); and *Township of Bensalem v. Press,* 93 Pa. Commw. 235, 501 A.2d 331 (1985), (a township zoning officer).

In evaluating the public interest in shielding an official from liability, the standard enunciated in *DuBree* has been refined to include an inquiry as to whether the decisionmaker's duties are discretionay and whether they can be measured by a predictable

standard of care. On the issue of discretion, the court has stated:

". . . [A] duty is discretionary if is involves judgment, planning, or policy decisions. It is not discretionary if it involves enforcement or administration of a mandatory duty at the operational level, even if professional expert evaluation is required. The key is whether the duty is mandatory or whether the act complained of involved policy-making or judgment." *Cerino v. Township of Palmer,* supra, at 8, 401 A.2d at 773; quoting *Jackson v. Kelley,* 557 F.2d 735, 737-738 (10th Cir. 1977); quoted with approval in *Township of Bensalem v. Press,* supra, 501 A.2d at 336.

The factors outlined above were recently applied by the Superior Court of Pennsylvania in a case remarkably similar to the case at bar. In *Zdaniewicz v. Sands,* supra, the court held that township supervisors were entitled to absolute immunity from suits for defamation when they undertook an official review of the performance of those employees assigned police duties. The case involved allegedly defamatory statements made during a meeting of the board of supervisors at which a policeman's job performance was reviewed and criticized. Defendant's preliminary objections in the nature of a demurrer were sustained with the determination that absolute immunity defeats such a suit at the outset. The Superior Court affirmed the trial court's decision and stated:

"Police protection is an area of policy-making which requires the exercise of wide discretion and sound judgment. It is an area in which the nature of the supervisor's decisions and actions cannot be measured against a predictable standard of care. Few would question the responsibility for providing police protection carries with it the right, if not the

duty, to review the job performance of police officers employed by the township. When supervisors undertake to do so, the public interest demands that their exercise of judgment not be hampered by the fear of lawsuits by policemen whose performances have been found wanting. Immunity in such cases will serve a substantial public interest. The potential for harm to individuals employed as police officers, on the other hand, is slight." Id., at 424-425, 432 A.2d at 234.

Instantly, Township Solicitor Thomas E. Waters Jr., Esq. informed defendant that he was appointed ". . . to conduct a thorough investigation of the Abington Police Department and to make recommendations to the board of commissioners . . . the police association is unhappy with the chief of police and seek his discharge or resignation from that office. . . . Therefore, your duty is to evaluate the respective positions of the parties, determine which side is right and make any recommendations deemed appropriate by you to rectify the situation."

As stated in his report, defendant traced the history of the dispute by studying back issues of area newspapers, official correspondence and transcripts of township meetings. Defendant interviewed dozens of individuals including police officers, active and retired; police wives; commissioners, past and present; township officials; politicians; law enforcement officials; township citizens; businessmen and professionals. Defendant's findings were presented in his report which concluded with the recommendation that the responsibilities of polce chief would best be fulfilled "by an outsider unshackled to the inter-related problems that have contributed to the present malaise."

It is beyond dispute that, when hired, defendant was charged to evaluate the Abington Township Po-

lice Department and recommend appropriate steps to remedy the situation. This task required unimpeded access to relevant data and an unlimited opportunity to address problems and explore options for improvement. To warrant merit, defendant's study required a frank, open and sober assessment, unconstrained by a fear of litigation. To expose a public servant such as the defendant to the apprehension that the motives that control his official conduct may at any time become the subject of a civil suit for damages would seriously cripple the proper and effective administration of public affairs.

Defendant is amply qualified as a public official under the test in *Montgomery v. City of Philadelphia,* supra, through his employment by the commissioners, his charge to investigate the police department, and his responsibility to make recommendations for improvement. More importantly, the policy considerations underlying absolute immunity would be effectively advanced by its use. As recognized in *Zdaniewicz v. Sands,* supra, not only is the public interest great in ensuring high quality police protection but an evaluation of police performance cannot be measured against a predictable standard of care as it involves a high degree of discretionary judgment.

Inasmuch as defendant's alleged defamatory statements appeared only in his report and at the public meeting of the commissioners, it is clear that they were made in his official capacity. To deny the protecton of absolute immunity would tend to chill investigations and potentially extinguish efforts to improve governmental functions. In accord with abundant precedent and sound public policy defendant was properly afforded the protection of absolute privilege to publish his report and discuss his investigations of the Abington Township Police

Department.

Plaintiff raises several other issues on appeal as to the liability of defendant for the allegedly defamatory statements made in the report and at the public meeting of the commissioners. Since the defense of absolute privilege has been afforded defendant, such other issues are inappropriate for consideration.

In light of the foregoing, the determination of this court should not be disturbed on appeal.