875 F.2d 1059
 O'DONNELL, William E., Appellant,
v.
YANCHULIS, John Individually and as Chairman of the West
Mahanoy Township Supervisors and Letcavage, John
Individually and as a member of the West Mahanoy Township
Supervisors, and Griffin, William Individually and as a
member of the West Mahanoy Township Supervisors, and the
Township of West Mahanoy.
 No. 88-1727.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 26, 1989.
Decided May 22, 1989.
 
 Edward E. Kopko (argued), Pottsville, Pa., for appellant.
 Frank L. Tamulonis, Jr. (argued), Zimmerman, Lieberman & Derenzo, Pottsville, Pa., for appellees.
 Before GIBBONS, Chief Judge, SEITZ and GREENBERG, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Plaintiff William E. O'Donnell appeals from the final order of the district court granting summary judgment in favor of the defendants, township supervisors John Yanchulis, John Letcavage, and William Griffin, and the Township of West Mahanoy. O'Donnell brought this action alleging that his termination by the township supervisors violated 42 U.S.C. Sec. 1983 by depriving him of his first amendment right to free speech. O'Donnell also alleged that the circumstances of his termination gave rise to a pendent state claim for defamation. O'Donnell seeks only damages, actual and punitive, on both claims.[1] This court has jurisdiction under 28 U.S.C. Sec. 1291.
 
 I.
 
 2
 As this case is an appeal from the grant of a motion for summary judgment, the facts and reasonable inferences therefrom on the issues decided will be viewed in favor of O'Donnell as the nonmoving party. See Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
 
 
 3
 We first summarize the allegations of O'Donnell's amended complaint. William O'Donnell served as chief of police for the Township of West Mahanoy from September 1976 to May 1985. His duties included issuing traffic and non-traffic citations and initiating criminal complaints for offenses occurring within the township; he supervised subordinate police officers employed by the township who performed the same duties.
 
 
 4
 In his complaint, O'Donnell alleged that during May and June 1984, the township supervisors asked O'Donnell and his subordinates to "fix" or withdraw certain citations issued by them. He was told that if he refused to comply with the supervisors' requests he would be fired. O'Donnell refused to "fix" or withdraw the citations and informed a local television station of the demands of the supervisors. He was then fired in May 1985.
 
 
 5
 O'Donnell alleged that his firing at a special meeting of the supervisors was in retaliation for his exercise of his free speech rights in informing a local television station of his allegations against the individual defendants. He further alleged that he was defamed in false statements made by the supervisors at the same special meeting of the township, and later released to the public. They asserted that his firing was based on insubordination and an assault on another officer, as well as the fact that he had slandered and maligned everyone associated with the township.
 
 
 6
 The defendants filed an answer that may be characterized as denying all material allegations of wrongdoing asserted in the complaint. It also contained numerous other defenses.
 
 
 7
 Thereafter O'Donnell's deposition was taken and it was filed along with affidavits executed by or on behalf of the opposing parties. Generally speaking, the deposition put in issue, inter alia, the dispute as to the factual basis for O'Donnell's discharge by the defendants. O'Donnell indicated in his deposition testimony that he contacted the local district attorney, the Pennsylvania Treasury Department, and the Pennsylvania State Police, White Collar Crime Unit, asking them to intervene; no prosecutions of the supervisors resulted.
 
 
 8
 O'Donnell repeated his allegation that he contacted a local television station on February 23, 1985, and disclosed to the public the alleged illegal acts of the township supervisors. During a public meeting of the township supervisors in March 1985, O'Donnell was told by the supervisors that he would be fired if he did not stop making public statements about their actions. O'Donnell continued publicly to expose the actions of the supervisors.
 
 
 9
 In their affidavits, defendants denied O'Donnell's charges and asserted, inter alia, that his discharge was for reasons other than those described by O'Donnell.
 
 
 10
 Thereupon the defendants moved for summary judgment which the district court granted solely on the ground that O'Donnell's speech was not protected by the first amendment. The court also granted summary judgment in favor of the defendants on the pendent state claim for defamation because under Pennsylvania law the supervisors possessed official immunity from suit for the statements made. Our review of the district court's order granting summary judgment is plenary. See Zamboni v. Stamler, 847 F.2d 73, 76 (3d Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 245, 102 L.Ed.2d 233 (1988).
 
 II. O'Donnell's First Amendment Claim
 
 11
 A state may not discharge a public employee on a basis that infringes upon an employee's constitutionally protected interest in freedom of expression. Rankin v. McPherson, 483 U.S. 378, 383-84, 107 S.Ct. 2891, 2896, 97 L.Ed.2d 315 (1987). Nevertheless, a state has an interest as an employer with respect to certain speech by its employees, and the task which this court faces is to strike a "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Id. (quoting Pickering v. Board of Education, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734-35, 20 L.Ed.2d 811 (1968)).
 
 
 12
 Although the district court somewhat equivocally assumed that O'Donnell spoke on a matter of public concern, under our analysis we must decide whether O'Donnell's charges constituted "speech on a matter of public concern." Connick v. Meyers, 461 U.S. 138, 146, 103 S.Ct. 1684, 1689, 75 L.Ed.2d 708 (1983). We make this determination by considering "the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48, 103 S.Ct. at 1690.
 
 
 13
 In his complaint, deposition, and affidavits, O'Donnell accused the township supervisors of various legal improprieties and abuses of their positions as supervisors. In essence he asserted that the township supervisors attempted to use their positions of power to cause the township police not to issue citations against their friends and other select individuals. He also charged that the supervisors insisted that O'Donnell dismiss citations against individuals similarly situated. In making these allegations, O'Donnell sought "to bring to light actual or potential wrongdoing or breach of public trust" on the part of the township supervisors. See Connick, 461 U.S. at 148, 103 S.Ct. at 1691. Needless to say, allegations of corrupt practices by government officials are of the utmost public concern.[2]
 
 
 14
 Thus, we conclude on this record that O'Donnell's speech was indeed speech on a matter of public concern. This brings us to a consideration of the balancing test mandated by Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).[3]
 
 
 15
 In order to determine whether O'Donnell's speech is protected by the first amendment, we must balance "the interest of the [township], as an employer, in promoting the efficiency of the public services it performs through its employees" against O'Donnell's interest in making his statements. Rankin, 483 U.S. at 386-88, 107 S.Ct. at 2898 (quoting Pickering, 391 U.S. at 568, 88 S.Ct. at 1734); see Czurlanis v. Albanese, 721 F.2d 98, 105 (3d Cir.1983). Considerations relevant to the township's interest include "whether the statement impairs discipline by superiors or harmony among coworkers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." Rankin, 483 U.S. at 388, 107 S.Ct. at 2899.
 
 
 16
 With regard to the employee's interest, we must also take into account the public's interest. See, e.g., Conner v. Reinhard, 847 F.2d 384, 390 (7th Cir.), cert. denied, --- U.S. ----, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988). The state bears the burden of justifying the discharge. See Rankin, 483 U.S. at 388, 107 S.Ct. at 2898.
 
 
 17
 The defendants attempt, as did the district court, to justify their decision to terminate O'Donnell solely on the basis that the working relationship between O'Donnell and the supervisors had completely deteriorated. There is no doubt, based on O'Donnell's own deposition testimony, that there was a major impairment of the working relationship:
 
 
 18
 Q Would you agree or disagree that there was a complete lack of working relationship with the supervisors on or before your termination May of '85?
 
 
 19
 A Yes.
 
 
 20
 Q So that would be correct?
 
 
 21
 A Yes.
 
 
 22
 "[A] finding of actual disruption," however, "is not sufficient to a determination that the employee's speech is not protected." Zamboni, 847 F.2d at 79.
 
 
 23
 The First Amendment balancing test [of Pickering ] can hardly be controlled by a finding that disruption did occur. An employee who accurately exposes rampant corruption in her office no doubt may disrupt and demoralize much of the office. But it would be absurd to hold that the First Amendment generally authorizes corrupt officials to punish subordinates who blow the whistle simply because the speech somewhat disrupted the office.... The point is simply that the balancing test articulated in Pickering is truly a balancing test, with office disruption or breached confidences being only weights on the scales.
 
 
 24
 Czurlanis, 721 F.2d at 107 (quoting Porter v. Califano, 592 F.2d 770, 773-74 (5th Cir.1979)) (emphasis in original).
 
 
 25
 Taking as fact that the township supervisors were justified in finding that O'Donnell was a disruptive employee, we must still determine whether O'Donnell's interest in speaking, on balance, outweighs the township's interest in discharging him. O'Donnell certainly had a real interest in exposing the alleged improprieties committed by the township supervisors, as would any citizen speaking on a matter of public concern. In this case not only were the public officials illegally abusing their positions of power but they were attempting to coerce O'Donnell into participating with them.
 
 
 26
 Also weighing in favor of finding O'Donnell's speech protected is the interest of the public. The public's interest in having "free and uninhibited debate on matters of public importance" is "the core value of the Free Speech Clause of the First Amendment." Pickering, 391 U.S. at 573, 88 S.Ct. at 1737. The public has a significant interest in encouraging legitimate whistleblowing so that it may receive and evaluate information concerning the alleged abuses of these public officials. This interest is particularly acute where, as here, the information of alleged illicit activity might not otherwise be available to the public.
 
 
 27
 Because this is an appeal from an order granting the defendants summary judgment, we would normally remand to permit the district court to engage in a correct application of the balancing test. However, when considering the protected status of speech, an appellate court must, in any event, make an independent constitutional judgment on the facts of the case. Connick, 461 U.S. at 150 n. 10, 103 S.Ct. at 1692 n. 10, 75 L.Ed.2d 708 (1983); Czurlanis, 721 F.2d at 102. Because the undisputed facts in this record dictate only one result, viz., that, on balance, O'Donnell's speech here was protected by the first amendment, we feel obligated to make that determination. We emphasize, however, that our ruling is based on the undisputed record before us on the issues resolved. On remand the district court will be required to reach the issues referred to in footnotes 3 and 4 because resolution of either one of them in defendants' favor would negate plaintiff's first amendment claim.
 
 
 28
 We emphasize that we are not implying that major disruption is irrelevant to the balancing test. We say only that it may be overbalanced by first amendment interests. Obviously, depending upon the circumstances, major disruption could dictate that reinstatement would not be a permissible remedy.[4]
 
 III. O'Donnell's Pendent Defamation Claim
 
 29
 O'Donnell also asserted a pendent claim for defamation under Pennsylvania law. The district court dismissed the claim on the ground that the supervisors were officially immune from suit for making the statements alleged.[5] O'Donnell argues that the district court erred in finding that the supervisors possessed official immunity with regard to allegedly defamatory statements made at a special public meeting of the township.[6] We assume that the status of each defendant is such as to permit them to assert the immunity defense.[7]
 
 
 30
 In deciding for defendants, the district court relied on Pennsylvania law. The Pennsylvania Supreme Court, in DuBree v. Commonwealth, 481 Pa. 540, 393 A.2d 293 (1978), considered the doctrine of official immunity and the policies underlying the doctrine. The supreme court noted that
 
 
 31
 [i]n order to discharge his duties effectively, a public servant must be free to exercise his judgment unhampered by the fear of unpredictable liability. Where the nature of the servant's decision or action in question is such that it may not be measured against a predictable standard of care, the possibility of litigation may tend to discourage the making of clear choices. It is in the public interest to avoid such a chilling effect upon the servant's performance of his duties.
 
 
 32
 Id. at 544, 393 A.2d at 295. The court concluded that "[w]here, but for the defendant's status, a right of action would lie under analogous rules of law, and no public policy would be promoted in shielding a defendant from liability, ... denial of the possibility of recovery is unjustified." Id. at 546, 393 A.2d at 296.
 
 
 33
 Since DuBree, the Pennsylvania Supreme Court has not confronted the specific question of whether an official is immune from suit for defamation. We may, however, absent controlling precedent, consider pronouncements from intermediate appellate courts as an indication of how the state supreme court would rule. See Adams v. Cuyler, 592 F.2d 720, 725 n. 5 (3d Cir.1979), affd, 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981).
 
 
 34
 In Zdaniewicz v. Sands, 288 Pa.Super. 420, 432 A.2d 231 (1981), township supervisors made allegedly defamatory statements about a township police officer during a supervisors' meeting at which the police officer's performance was reviewed. The superior court noted that the "acts and decisions for which the Township Supervisors assert immunity ... were related to their duty to provide adequate and cost-effective police protection for residents of the township." Id. at 424, 432 A.2d at 233. The court went on to note that "[p]olice protection is an area of policy-making which requires the exercise of wide discretion and sound judgment" and "the nature of the supervisors' decisions and actions cannot be measured against a predictable standard of care." Id. at 424-25, 432 A.2d at 234. The court concluded that "when township supervisors undertake an official review of the performance of those employees who have been assigned police duties, they have absolute immunity from suits for defamation." Id. at 424-25, 432 A.2d at 234.
 
 
 35
 In the case at bar, the township supervisors made allegedly defamatory statements when they issued a statement at a Township meeting indicating the reasons for dismissing O'Donnell from his position as chief of police. They indicated that O'Donnell was terminated because of his insubordination, his lack of a working relationship with the supervisors, his assault on a subordinate officer, and his slanderous remarks directed at the supervisors and other citizens of the township. These statements were made in the course of the supervisors' duty to provide the township with police protection; the statements constitute an official review of O'Donnell's performance as chief of police. Under Zdaniewicz, the township supervisors were held to be entitled to absolute immunity. Although that matter is not entirely free from doubt we predict that the Pennsylvania Supreme Court would apply the same rule were they considering this claim. We do not consider whether the statements, because they were made by the supervisors at a township meeting, are entitled to protection under Pennsylvania law, apart from the official immunity doctrine.
 
 IV.
 
 36
 We will reverse the district court's order granting summary judgment for the defendants on the first amendment claim and remand for further appropriate proceedings. On the pendent state claim for defamation, we will affirm the district court's order granting summary judgment in favor of the defendants.
 
 
 
 [1]
 It is not clear from the amended complaint on what theory, if any, O'Donnell seeks to impose liability on the Township of West Mahanoy. We shall assume that the matter is "open" on remand. Further, on this record, we do not address any concern as to whether there is a potential for a conflict of interest in the same counsel representing both the township and the supervisors
 
 
 [2]
 O'Donnell testified in his deposition:
 Q And they [O'Donnell's complaints] had been filed in your capacity as a private citizen?
 A Yes, they were.
 Q What was your purpose in going to WNEP? [the television station]
 A To bring this to the attention of the public.
 Q Why?
 A Because we had exhausted every legal avenue that I could possibly go through or knew of to go through.
 Q What did you hope to accomplish?
 A What did I hope to accomplish?
 Q Yes.
 A I felt it was a corrupted administration; and this should be brought to somebody's attention; that this shouldn't be allowed to go on.
 Q I presume voted out of office at the next possible election?
 A I had no idea what would happen. I felt somebody had to know about it.
 
 
 [3]
 This appeal does not require us to consider any issue as to whether O'Donnell's statements were false and were knowingly or recklessly made by him. See Pickering, 391 U.S. at 574, 88 S.Ct. at 1737; Porter v. Califano, 592 F.2d 770, 776 (5th Cir.1979)
 
 
 [4]
 We are not called upon by this appeal to consider any issue as to whether O'Donnell was discharged for reasons unrelated to the exercise of his free speech rights. See Mount Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); Czurlanis, 721 F.2d at 107
 
 
 [5]
 We need not consider whether the district court abused its discretion in determining the merits of the pendent claim after granting summary judgment to defendants on the federal claim. See Tully v. Mott Supermkts., Inc., 540 F.2d 187, 195-96 (3d Cir.1976). We say this because we have now restored the federal claim and thus, in the interest of justice, must address the legal sufficiency of the district court's determination of the pendent claim. Indeed, the district court stated that even if the defendants were not absolutely immune, it would nevertheless dismiss the defamation claim for lack of pendent jurisdiction
 
 
 [6]
 It is not suggested that any Pennsylvania statute is applicable here
 
 
 [7]
 See note 1